Lester Arthur MOUTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–93–292 CR.

Court of Appeals of Texas, Beaumont.

Jan. 25, 1995.

Discretionary Review Refused April 26, 1995.

Harold J. Laine, Jr., Beaumont, for appellant.

Tom Maness, Dist. Atty., John R. Dewitt, Asst. Dist. Atty., Beaumont, for State.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

Appellant was convicted by a jury for having committed the felony offense of Aggravated Robbery. The jury assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of twenty (20) years. Appellant raises six points of error on appeal, none of which complain of the sufficiency of the evidence to support the conviction.

Point of error one provides, "The trial court erred and abused its discretion in denying appellant's objection to the qualification of State's witness Kathy Deason." The State called Ms. Deason, an identification technician with the Beaumont Police Department, to testify to the results of fingerprint analyses conducted at the victim's house. At this point in the trial the 72 year old victim, Ms. Elouise Dixon, had already testified and identified appellant as the person who twice came to her door asking to use the phone. Upon being permitted to enter the second time, appellant grabbed the victim's toaster and struck the victim on the head. Appellant then dragged the victim into the bedroom exclaiming that he needed money. At some point while still in the bedroom, the victim observed appellant pick up the victim's radio. Out of fear that she would be assaulted again, the victim instructed appellant to take her money which was located in her purse. Appellant took approximately $25 and left the house. The victim testified that she had met appellant on one previous occasion approximately one month prior to the incident in question.

With regard to Ms. Deason's qualifications, she testified as follows:

Q. (State) Mrs. Deason, how are you employed?

A. (Deason) I'm employed as an identification criminologist technician for Beaumont Police Department.

Q. How long have you been employed?

A. 11 months.

Q. All you just said, what (sic) your duties as a tech?

A. As an I.D. tech we do crime scene analysis. We do photographs, fingerprinting, collect evidence, compare fingerprints, develop and print our own photographs.

Q. And have you ever been called on to make fingerprint comparisons and identifications?

A. Yes, sir.

Q. Have you done this on few or many occasions?

A. Many occasions.

Q. Can you take a print that is unknown to you and compare it with a known print of a person and determine if it belongs to the same person?

A. Yes, sir, you can.

Q. Have you done that on few or many occasions?

A. Many occasions.

\* \* \* \* \* \*

Q. And what type—Did you lift prints from those surfaces?

A. Yes, sir. From the toaster and from the radio.

Q. What—Is there a specific name for that type of print that you lifted?

A. The pattern is a whirl pattern. It's a latent print.

Q. Latent print. Can you explain to the jury what a latent print is. (sic)

A. A latent print is where you would touch the surface of any—touch any surface. Then we use a fingerprint powder dust to dust over the surface. Then we use tape—The print will become visible with the powder. Then we use fingerprint tape to lift the print with. Then it's placed on a card where it's kept so the print will not be mutilated or destroyed.

\* \* \* \* \* \*

Q. Do you have an opinion based on your expereince (sic) and training whether the inked print on State's Exhibit Number 4 and Number 3 are from the same person?

[Trial Counsel]: Your Honor, we object. She hasn't been qualified and—

The Court: Sustained. You have to qualify the witness.

[The State]: Yes, sir.

Q. (State) Mrs. Deason, could you explain your training?

A. (Deason) Our training is from Sargeant (sic) Tatum. We receive training and extensice (sic) schooling from Sargeant (sic) Tatum. We go through a three month fingerprint course under Sargeant (sic) Tatum, who is the head our (sic) department.

Q. How long have you been doing this?

A. 11 months.

Q. Do you have an opinion whether or not State's Exhibit Number 3 and 4 are from the same person?

[Trial Counsel]: Your Honor, we are going to renew our objection as to the lack of qualifications. It would allow her to give testimony in this regard, especially on the date that these were obtained.

The Court: Overruled.

■ Appellant correctly points out that admissibility of expert testimony is governed by Tex.R.Crim.Evid. 702, which provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Appellant also correctly recognizes that the initial burden of establishing a witness's qualifications lies with the party offering the testimony. *Matson v. State*, 819 S.W.2d 839, 851 (Tex.Crim. App.1991). This burden must be carried by clear and convincing evidence. *See Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim.App. 1992). The determination that a witness has been sufficiently qualified as an expert rests largely with the discretion of the trial court, and the court's decision will not be disturbed on appeal absent a clear showing of abuse of discretion. *Sterling v. State*, 800 S.W.2d 513, 521 (Tex.Crim.App.1990), *cert. denied*, 501 U.S. 1213, 111 S.Ct. 2816, 115 L.Ed.2d 988 (1991).

■ We see *Matson* as also instructive in two areas. Relying on *Holloway v. State*, 613 S.W.2d 497, 501 (Tex.Crim.App.1981), the *Matson* Court observed that no rigid formula exists for determining whether a particular witness is qualified to testify as an expert; and that a witness may be qualified by reason of knowledge, skill, experience, or training, regardless of its source. *Matson, supra* at 851, n. 10. In the instant case, the pertinent portion of the record before us, reproduced above, contains what we believe to be sufficient evidence of Ms. Deason's qualifications by way of her testimony concerning her knowledge, skill, experience, training, and education. As we read Rule 702, any *one* of these methods of qualification can be sufficient proof as they are listed in the disjunctive. *See also, Holloway, supra* at 501.

■ Secondly, the *Matson* opinion makes the point that it is incumbent upon the party who questions the qualifications of a purported expert to demonstrate his or her incompetency through voir dire examination and by objection. *Matson, supra* at 851–852. While appellant did timely object to the lack of Ms. Deason's qualifications, he made no attempt to question her on voir dire to demonstrate to the trial court whatever lack of competency existed. As a result, Ms. Deason's testimony concerning her qualifications as a fingerprint expert went virtually unchallenged. Under the circumstances, we find no clear abuse of discretion by the trial court in permitting Ms. Deason to testify that appellant's fingerprint was found on the victim's radio. Point of error one is overruled.

As the sole issue underlying points of error two through six is whether or not it is reversible error for the trial court to fail to supply a definition of the offense "theft" in the jury instructions, said points of error will be addressed together. Initially, we take note of the fact that neither appellant nor our own research has turned up a case that states flatly that failure to define "theft" in the jury instructions results in either "some harm" or "egregious harm" as discussed in *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1985) (opinion on rehearing). The pre-*Almanza* case of *Lewis v. State*, 656 S.W.2d 472 (Tex. Crim.App.1983), is instructive. In *Lewis*, the Court made the following observation:

Although the *Evans,* supra,[1] and *Rohlfing,* supra,[2] opinions reached different results, both decisions concurred in the holding that the application paragraph of a jury charge on aggravated robbery is sufficient if the offense is alleged to have occurred "while in the course of committing theft," and the terms "theft" and "in the course of committing theft" are defined in the definitional section. Alternatively, the trial judge may, in the application paragraph, set forth the constituent elements of theft, see *Hughes v. State,* 561 S.W.2d 8 (Tex.Cr.App.1978), so long as all of the elements are included. See also *Schmidt v. State,* 641 S.W.2d 244 (Tex.Cr.App.1982). 656 S.W.2d at 474, n. 2.

In reading the above quoted language from *Lewis,* the Court appears to be saying that, in regard to having to define "theft" for the jury, the jury instructions are sufficient if "theft" is either defined in the abstract portion of the instructions, or the essential elements of "theft" are set out in the application paragraph of the instructions. In the instant case, while the trial court properly defines the statutory phrase "in the course of committing theft," and includes said phrase in the application paragraph of the jury instructions, the term "theft" is neither defined nor are its essential elements integrated into the application paragraph. Error is therefore shown.

While appellant does recognize the existence of *Almanza, supra,* in his discussion of harm contained in his brief, he relies mainly on pre-*Almanza* cases that hold that certain types of charging error are "fundamental" and therefore automatically reversible. *Almanza* did away with the concept of "fundamental" charging error and automatic reversible error. In the instant case, the record reflects that appellant's trial counsel did not object to the trial court's failure to define or apply "theft" in the jury instructions. *Almanza* provides that if no proper objection is made at trial and charging error is raised on appeal, a reversal will be obtained only if the error is so egregious and created such harm that appellant has been denied a fair and impartial trial. *Almanza,* 686 S.W.2d at 171.

This Court has addressed a very similar issue arising out of a burglary prosecution. In *Laday v. State,* 690 S.W.2d 53 (Tex. App.—Beaumont 1985, no pet.), we held that the erroneous failure by the trial court to define "theft" in the jury instructions was not so egregious as to deprive the defendant of a fair and impartial trial, where each element of theft was clearly proven by the evidence. *Id.* at 56. In the instant case, the testimony clearly reflects that each element of a completed theft was proven. The victim testified that appellant struck her over the head with the toaster, dragged her into the bedroom, took $25 from her purse and then left the house, all without her consent. Furthermore, appellant's sole defense was alibi. We find no egregious harm to appellant from the lack of a specific definition or application of the term "theft" in the jury instructions. Points of error two through six are overruled. The judgment and the sentence are affirmed.

AFFIRMED.

1. *Evans v. State,* 606 S.W.2d 880 (Tex.Crim.App. 1980), *overruled by, Woods v. State,* 653 S.W.2d 1 (Tex.Crim.App.1983) (opinion on rehearing).

2. *Rohlfing v. State,* 612 S.W.2d 598 (Tex.Crim. App.1981).