Affirmed and Opinion filed December 12, 2002









Affirmed
and Opinion filed December 12, 2002.

 




 
 
 
  
 
 
 




In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-01-01180-CR

____________

 

KEVIN DEREK PEAVY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County Criminal Court at
Law No. 3

Harris County, Texas

Trial Court Cause No. 1082869

 



 

O P I N I O N

Appellant, Kevin Derek Peavy, was convicted by a jury of
terroristic threat.  The trial court
assessed his punishment at 180 days in the Harris County Jail, with the
sentence suspended, and a $500 fine. 
Appellant appeals on grounds that (1) the evidence is factually
insufficient to support his conviction, and (2) the trial court erred in
failing to instruct the jury on the definition of aggravated assault.  We affirm.








                                                             I. 
Background

Appellant owned and operated a dirt
yard.  On April 18, 2001, Triston Allen,
who lived near appellant=s yard, was riding his motorcycle with his two-year-old
niece.  Allen testified he rode a few
feet into appellant=s yard to turn around. 
When Allen was turning around, appellant came out of the office using
racial epithets and yelling, “Get your n----r ass out of my yard.  Don=t ever turn in my yard again.  I=ll kill you.”  Allen picked up speed and left appellant=s yard.  

Allen asked two women to look after his niece while he went
to a tell a friend what had happened. 
Allen asked his friend to return to appellant=s yard with him so he could apologize
to appellant.  Allen wanted his friend to
accompany him because he was new to the neighborhood and did not know
appellant.  According to Allen, when he
and his friend rode into appellant=s yard, appellant came out of the
office with a gun, saying “So you got something for me?  I got something for you.”  Allen and his friend saw appellant had a gun
and left.  

In his testimony, appellant recounted a different version of
events.  According to appellant, Allen
was riding his motorcycle with a young child at least 30 or 40 feet into his
yard.  Appellant told Allen to get out of
his yard; Allen, however, did not leave, but, instead, “wanted to have a
discussion about it, which . . . involved cuss words.”  When Allen did not leave immediately, appellant
asked him to leave his property and not return. 
As Allen was leaving, he said he would be back.  Appellant went back into his office and a
short while later heard the motorcycle. 
Appellant saw that Allen had returned with another male, not the young
child.  Appellant grabbed his .45 caliber
gun with the intention of defending himself. 
Appellant testified Allen and his friend threatened him and threatened
to burn down the building located on the property.  Seeking an address in order to report the incident
to the police, appellant attempted to follow them in his pickup truck after
they had left.  








Walter Novak was in his yard when he saw appellant speeding
down his street.  Novak moved out to the
street and signaled for appellant to slow down. 
Appellant stopped and told Novak he was looking for a couple of
individuals with whom he had just had a confrontation. Appellant told Novak he
wanted to ask them why they were driving in his yard.  

Marcus Buenrostro testified he was outside washing his truck
with his father, wife, and baby when Allen and a friend came by on a motorcycle
and said someone had pulled a gun on them. 
Buenrostro stayed outside while Allen went into the house and called the
police.  Buenrostro then saw a pickup truck
speeding down the street past his house. 
Buenrostro testified the truck nearly hit his younger sister who was
playing near the street.  Buenrostro and
his wife, with the baby, pursued appellant in order to get a license plate
number.  Buenrostro testified he knew
appellant was the same person who had pulled a gun on his friends earlier
because of their description of appellant=s truck.  

Appellant, still in his truck, was still talking to Novak
when Buenrostro pulled up next to him. 
Buenrostro got out of his vehicle and asked appellant if there was a
problem.  According to Buenrostro,
appellant said, “I know you know where them f- - -ing
n----rs are.” The situation escalated as Buenrostro
and appellant continued to exchange words. 
Novak testified that appellant then picked up a .45 caliber automatic
pistol that was laying on the seat next to appellant.  Novak testified appellant pointed the gun at
the mirror, cocked it, and said, “I ought to put a cap in your ass.” 

Buenrostro testified appellant was pointing the gun at him
and looking directly at him when he made the threatening statement.  Buenrostro felt appellant meant he was going
to kill him.  According to appellant,
Buenrostro approached him in a hostile and threatening manner and the
confrontation became “more agitated.” 
Appellant stated he picked up his gun because he felt threatened by
Buenrostro.  Appellant admitted that he
raised his gun straight up in the air, cocked it, and said “I ought to put a
cap in your ass,” but claimed he did not point it at Buenrostro.  Appellant claimed it was his intention to “diffuse
the situation,” not to threaten Buenrostro. 









Believing that he needed to defend himself because appellant
had raised and cocked his gun, Buenrostro foolishly retrieved a claw hammer
from his vehicle.  Buenrostro was about
two and one-half feet from appellant=s truck when Novak stepped in between
Buenrostro and appellant and told them to stop. 
At that point, a police car was approaching the scene and the
confrontation immediately ended.  

                                                    II. 
Terroristic Threat

In his first issue, appellant challenges the factual
sufficiency of the evidence supporting his conviction for terroristic
threat.  When reviewing claims of factual
insufficiency, it is our duty to examine the jury=s weighing of the evidence.  Clewis v. State, 922 S.W.2d 126, 133,
134 (Tex. Crim. App. 1996).  In other
words, we must view the evidence “without the prism of ‘in the light most favorable
to the prosecution’” and set aside the verdict only if it is “so contrary to the overwhelming weight of the evidence as to
be clearly wrong and unjust.”  Id.
at 129.  Thus, when reviewing factual
sufficiency challenges, appellate courts must determine Awhether a neutral review of all of
the evidence, both for and against the finding, demonstrates that proof of
guilt, although adequate if taken alone, is greatly outweighed by contrary
proof.@ 
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  

Section
22.07(a) provides for the offense of terroristic threat:

(a) A person commits an offense if he threatens to
commit any offense involving violence to any person or property with intent to:

                                                                   *        *       
*

(2)
place any person in fear of imminent serious bodily injury;

Tex. Pen. Code Ann. ' 22.07(a)(2) (Vernon 1994).  








A threat is a “‘declaration of intention or determination to
inflict punishment, loss or pain on another, or to injure another by the
commission of an unlawful act.’”  Cook
v. State, 940 S.W.2d 344, 347 (Tex. App.CAmarillo 1997, pet. ref=d) (quoting Black=s Law Dictionary 1480 (6th ed.
1990)).  To commit a terroristic threat,
the defendant must have the specific intent to place a person in fear of
imminent serious bodily injury.  Dues
v. State, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982).  It is not necessary for the victim to
actually be placed in fear of imminent serious bodily injury or for the accused
to have had the capability or intention to actually carry out his threat.  Id. 
Rather, the offense is complete when “the accused by his threat sought
as a desired reaction to place a person in fear of imminent serious bodily
injury.”  Id. at 306.




                                                                      A.  Intent

Appellant argues there was no evidence concerning the
definition of “cap” or what appellant meant in using that term, i.e.,
whether appellant had the intent to place Buenrostro in fear of imminent bodily
injury.  “A person acts with intent with
respect to the nature of his conduct or to a result of his conduct when it is
his conscious objective or desire to engage in the conduct or cause the result.”  Id. at 305 (citing Tex. Pen. Code Ann. ' 6.03).  Intent can be inferred from the defendant=s acts, words, and conduct.  Id. 
Intent is a question of fact for the jury=s determination.  Manrique v. State, 994 S.W.2d 640, 649
(Tex. Crim. App. 1999) (Meyers, J., concurring).  

Considering the phrase, “I ought to put a cap in your ass,”
in the context of the sequence of events, i.e., appellant=s making racial slurs to Allen,
coming out of his office with a gun when Allen and his friend were in his yard,
speeding through the neighborhood in search of Allen and his friend, arguing
with Buenrostro, and raising and cocking a loaded gun, the jury could infer
that appellant intended to place Buenrostro in fear of serious bodily injury.

                                                                 B.  Immediacy








Appellant further argues his threat lacked the immediacy
necessary to convey a threat of imminent serious bodily injury.  Imminent means “‘near at hand; mediate rather
than immediate; close rather than touching; impending; on the point of
happening; threatening; menacing; perilous.’” 
In re A.C., 48 S.W.3d 899, 904 (Tex. App.CFort Worth 2001, pet. denied)
(quoting Black=s Law Dictionary 750 (6th ed.
1990)).  The focus of the inquiry should
be whether the complainant was afraid of imminent serious bodily injury at the
time of the offense.  Id.

Specifically, appellant characterizes his words as “some
vague” future threat that, when combined with his action of pointing the gun at
the car mirror rather than at Buenrostro, indicate his true intent was to “deter
Buenrostro, not to place him in fear of any imminent harm.”  In support of this contention, appellant
relies on Bryant v. State, 905 S.W.2d 457 (Tex. App.CWaco 1995, pet. ref=d). 
In that case, Bryant stated to Raulston, a county commissioner, that if
he did not grade the road in front of his house the following day, “he was
going to kick [Raulston=s] g-d dBn ass.”  Id. at
460.  The court of appeals reversed the
conviction, holding there was no evidence that Bryant had specific intent to
place Raulston in fear at the time he made the statement.  Id. at 461.  Instead, the threat was conditioned on the
non-occurrence of a future event.  Id.  

Appellant=s reliance on Bryant is misplaced.  It does not matter whether appellant pointed
the gun directly at Buenrostro, the mirror, or in the air; Buenrostro was
standing only two and one-half feet from appellant when appellant raised and
cocked his gun and made the threat. 
Appellant placed no conditions on his threat.  Moreover, the jury could infer the imminence
of appellant=s threat by Buenrostro=s perceived need to retrieve the claw
hammer from his own vehicle and by Novak=s stepping between appellant and
Buenrostro. 








            The jury is the sole
judge of the facts, the credibility of the witnesses, and the weight to be
given the evidence.  Beckham v. State,
29 S.W.3d 148, 152 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d). 
Therefore, the jury may believe or disbelieve all or part of any witness=s testimony.  Jones v. State, 984 S.W.2d 254, 258
(Tex. Crim. App. 1998).  Reconciliation
of any conflicts in the evidence falls within the exclusive province of the
jury.  Heiselbetz v. State, 906
S.W.2d 500, 504 (Tex. Crim. App. 1995). 
Thus, simply because the defendant presents a different version of the
facts does not render the evidence insufficient.  Ford v. State, 38 S.W.3d 836, 847
(Tex. App.CHouston [14th Dist.] 2001, pet. ref=d). 


The fact that appellant presented a different set of facts
does not render the evidence factually insufficient.  The jury, as was its right, chose not to
believe appellant=s testimony. We find the evidence is factually sufficient to
support the jury=s finding that appellant intended to place Buenrostro in fear
of imminent bodily injury.  Appellant=s first issue is overruled.  

                                                           III. 
Jury Charge








In his second issue, appellant claims the trial court erred
in failing to provide either a definition of “aggravated assault” in the
instructions or the elements of the offense in the application paragraph of the
charge to the jury.[1]  Because defense counsel did not object to
these omissions, error, if any, does not require reversal unless it is so
egregious and created such harm that appellant was denied a fair trial.  Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1984).  We assay the
actual degree of harm in light of the entire jury charge, the state of the
evidence (including the contested issues and weight of probative evidence), the
argument of counsel, and any other relevant information revealed by the trial
record.  Id.  

Appellant argues that by failing to either define the term aggravated
assault in the definitional portion of the charge or set forth the elements in
the application paragraph, the trial court left the jury to speculate on
whether appellant had threatened to commit aggravated assault.  Appellant relies on Mouton v. State as
support.  892 S.W.2d 234 (Tex. App.CBeaumont 1995, pet. ref=d). 
In Mouton, the court found the trial court erred in neither
defining theft nor integrating its essential elements into the application
paragraph.  Id. at 237. However,
observing that each element of a completed theft was proven, the court held any
harm resulting from the absence of a definition or application of theft was not
so egregious and did not create such harm as to deny the appellant a fair and
impartial trial.  Id.  

Similarly, each element of the threat to commit aggravated
assault was proven.  Aggravated assault
requires that the accused commit assault, i.e., intentionally or
knowingly threaten another with imminent bodily injury,[2]
and (1) cause serious bodily injury; or (2) use or exhibit a deadly weapon
during the assault.  Tex. Pen. Code Ann. ' 22.02(a) (Vernon 1994).  Appellant=s statement, AI ought to put a cap in your ass,@ in combination with raising his gun
in the air, as appellant contends, and cocking it close to complainant,
satisfies a threat to commit aggravated assault.  Therefore, any harm in the omission of the
definition of aggravated assault was not so egregious as to deny appellant a
fair and impartial trial.  








Appellant=s second issue is overruled. 
Accordingly, the judgment of the trial court is affirmed.  

 

 

 

 

/s/        J. Harvey Hudson

Justice

 

 

 

 

Judgment rendered
and Opinion filed December 12, 2002.

Panel consists of
Chief Justice Brister and Justices Hudson and Fowler.

Do Not Publish C Tex.
R. App. P. 47.3(b).











[1]  The
information alleges in relevant part that appellant:

 

did
then and there unlawfully threaten to commit an offense involving violence,
namely Aggravated Assault upon MARCUS BUENROSTRO with the intent to place
MARCUS BUENROSTRO in fear of imminent serious bodily injury.

 

The application
portion of the jury instructions states:

 

Now, therefore, if you find
from the evidence beyond a reasonable doubt, that in Harris County, Texas,
KEVIN DEREK PEAVY, hereafter styled the Defendant, heretofore on or about April
18, 2001, did then and there unlawfully threaten to commit an offense involving
violence, namely AGGRAVATED ASSAULT upon MARCUS BUENROSTRO with the intent to
place MARCUS BUENROSTRO in fear of imminent serious bodily injury, then you
will find the Defendant guilty.





[2]  A
person commits assault if he:

 

(1)
intentionally, knowingly, or recklessly causes bodily injury to another . . .; 

(2)
intentionally or knowingly threatens another with imminent bodily injury . . .;
or 

(3)
intentionally or knowingly causes physical contact with another when the person
knows or should reasonably believes that the other will regard the contact as
offensive or provocative.  

 

Tex. Pen. Code Ann. '
22.01(a) (Vernon Supp. 2003).