02-10-079-CR













 



 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-10-00079-CR 

 

 


 
 
 Tina Marie Baker
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

------------

 

FROM THE
355th District Court OF Hood COUNTY

------------

MEMORANDUM OPINION[1]

----------

          Appellant Tina Marie Baker appeals her
conviction for burglary of a habitation. 
In two points, she argues that the evidence is insufficient to support
the jury’s verdict and that the trial court erred by failing to define an
element of the offense in the jury charge. 
We affirm.

Background Facts

The State’s version of the facts

          On January 29, 2009, Zach Oakley, a
high school student, lived at a house on Bentwater
Parkway in Granbury.  That night, Zach
and his mother, Dana Baker, were inside the house’s open attached garage while they
were packing a moving truck.  Zach’s
stepdad and Dana’s husband, Anthony Baker, was sleeping in his room.  Zach’s cousin, Kayla, was packing boxes in
the kitchen.

          At about midnight, appellant, who is Anthony’s
ex-wife, arrived at the house, threw eggs at the moving truck, yelled an
obscenity at Dana, and ran into the garage. 
Appellant grabbed Dana’s hair and pulled her to the ground, and Zach ran
into the house, called 911, and woke up Anthony.[2]  When Zach came back to the garage, he saw
appellant and Dana fighting on the ground while Kayla and Anthony were trying
to pull them apart.[3]

          Anthony eventually pulled appellant
off of Dana, and when Zach told appellant that the police were coming,
appellant quickly left in a car with Bryan Anderson, who had come to the house
with her.  Because Zach had given the
dispatcher the car’s license plate number, the police found appellant and Bryan.
 Appellant, who smelled like alcohol,
admitted that she had thrown eggs at the moving truck.  She also initially told an officer that she
had been assaulted by three females but later told the officer that she was
assaulted by two females and a male.  When
another officer searched the car that appellant and Anderson were in, he found
an open alcoholic drink and unopened alcoholic drinks. Anthony, Dana, Zach, and
Kayla gave statements to a Hood County Sheriff’s Department sergeant, and the
sergeant directed appellant’s arrest.

Appellant’s version of the facts

          On
January 29, 2009, appellant and Bryan became drunk.  Appellant bought some eggs, threw them at Anthony’s
motorcycle shop, and then went with Bryan to the Bentwater
Parkway house.  When they arrived there,
appellant became upset and threw eggs at the moving truck.  She then heard Dana yell, “Bring it on,
bitch,” and Dana and appellant moved toward each other.[4]  Appellant met Dana outside the garage, at
which time Kayla pushed appellant from behind. Appellant held Dana’s hair to
defend herself while Dana, Kayla, and Anthony kicked
and punched her.  Appellant and Bryan
eventually left and were stopped and arrested while they were on their way to
the sheriff’s department to report what had happened.[5]




 

Procedural history

          A grand jury indicted appellant for
burglary of a habitation.  Appellant pled
not guilty, but a jury found her guilty. 
After hearing evidence on punishment, the jury assessed eight years’
confinement and a $6,000 fine but recommended suspension of that sentence so
that appellant could be placed on community supervision.  The trial court signed a judgment incorporating
the jury’s punishment recommendation, and appellant filed notice of this
appeal.

Evidentiary Sufficiency

          In her first point, appellant argues
that the evidence is insufficient to show that she committed burglary.

Standard of review and applicable law

          In our review of the sufficiency of
the evidence to support a conviction, we view all of the evidence in the light
most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789
(1979); Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  This standard gives full play to the
responsibility of the trier of fact to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. 
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton,
235 S.W.3d at 778.

          The
trier of fact is the sole judge of the weight and
credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon
1979); Brown v. State, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), cert.
denied, 129 S. Ct. 2075 (2009). 
Thus, when performing an evidentiary sufficiency review, we may not
re-evaluate the weight and credibility of the evidence and substitute our
judgment for that of the factfinder.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@  Hooper v. State, 214
S.W.3d 9, 16–17 (Tex. Crim. App. 2007).

          Paragraph
two of the indictment alleged that appellant “did then and there intentionally
or knowingly, without the effective consent of Dana Baker, the owner thereof,
enter a habitation and did attempt to commit or commit assault.”  See Tex.
Penal Code Ann. § 30.02(a)(3) (Vernon 2003).[6]  The penal code states that a “habitation”
includes “each separately secured or occupied portion of the structure” and “each
structure appurtenant to or connected with the structure.”  Id.
§ 30.01(1) (Vernon 2003); see White v.
State, 630 S.W.2d 340, 342 (Tex. App.—Houston [1st Dist.] 1982, no pet.) (holding that a house’s attached garage was a habitation
under the penal code’s definition).  An
“owner” includes someone who has possession of property “or a greater right to
possession of the property than the actor.” 
Tex. Penal Code Ann. § 1.07(a)(35)(A) (Vernon
Supp. 2010); Ronk v. State, 250 S.W.3d 467, 470 (Tex.
App.—Waco 2008, pet. ref’d).

Analysis

          Appellant
argues that the State failed to prove that (1) she intended to assault Dana
inside a habitation, (2) the garage was not open to the public, and (3)
appellant went into the garage voluntarily (she asserts that she was pushed
into it).  The facts recited above
presented the jury with conflicting theories about how appellant entered the
garage and whether she assaulted Dana or merely defended herself.  But in our evidentiary sufficiency review, we
must presume that the jury resolved any conflicting inferences in favor of the
prosecution and defer to that resolution.[7]  Jackson, 443 U.S. at
326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.

          If
the jury believed the witnesses called by the State and disbelieved appellant’s
and Bryan’s testimony, it could have rationally determined that appellant ran
into the open garage, grabbed Dana’s hair, and pulled her to the ground,
causing her pain.  This evidence shows
that appellant attempted to commit or committed assault in the garage.  See Tex.
Penal Code Ann. § 22.01(a)(1) (Vernon Supp. 2010)
(stating that a person can commit assault by intentionally, knowingly, or
recklessly causing bodily injury to another); id. § 1.07(a)(8) (stating that
“bodily injury” includes “physical pain”); see
also Thomas v. State, 303 S.W.3d
331, 333–34 (Tex. App.—El Paso 2009, no pet.) (holding
that the evidence was sufficient to prove assault when a wife felt pain after
her husband pushed her, slapped her back, and caused her to stumble). 

          Appellant
also notes that the garage was open and “[a]nyone
could freely walk up and into” it.  But
appellant has not cited authority showing that the garage’s door being open
changed its status as a habitation.  Cf. White, 630 S.W.2d at 341–42 (holding
that a garage that did not have a front door was a habitation even though it
was not enclosed); see also Tennyson v.
State, No. 11-92-00107-CR, 1993 WL 13141619, at *2 (Tex. App.—Eastland June
24, 1993, no pet.) (not designated for publication) (holding that an attached carport, which was open on three
sides, qualified as a habitation).  Also,
even though appellant lived at the Bentwater Parkway
house before she divorced Anthony, Dana and Anthony testified that appellant
did not have permission to be in the garage, and Anthony said that he had told
appellant not to come there.  Appellant
admitted that she knew that Dana did not want her to be there.  Thus, the jury could have rationally found
that despite the garage’s door being opened, it qualified as a habitation that
appellant did not have consent to enter.

          For
all of these reasons, we hold that the evidence is sufficient to support
appellant’s conviction.  See Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  We overrule appellant’s first point.

Jury
Charge Error

          In
her second point, appellant contends that the trial court erred by failing to
define “assault” in the jury charge when the jury had to find that appellant
attempted to commit or committed assault to convict her of burglary.

Standard
of review and applicable law

          A
person commits assault when the person intentionally, knowingly, or recklessly
causes bodily injury to another; intentionally or knowingly threatens another
with imminent bodily injury; or intentionally or knowingly causes physical
contact with another when the person knows or should reasonably believe that
the other will regard the contact as offensive or provocative.[8]  Tex. Penal Code Ann. § 22.01(a).  Appellant did not object to the omission of
an assault definition at trial.

Appellate
review of error in a jury charge involves a two-step process.  Abdnor v.
State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); see also Sakil v. State, 287 S.W.3d 23, 25–26 (Tex. Crim. App.
2009).  Initially, we must determine
whether error occurred; if it did, we must then evaluate whether sufficient
harm resulted from the error to require reversal.  Abdnor, 871 S.W.2d at 731–32.

If
there is error in the court’s charge but the appellant did not preserve it at
trial, we must decide whether the error was so egregious and created such harm
that the appellant did not have a fair and impartial trial—in short, that Aegregious
harm@
has occurred.  Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh=g);[9]
see Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2006); Allen
v. State, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); Hutch v. State,
922 S.W.2d 166, 171 (Tex. Crim. App. 1996).  Egregious harm is the type and level of harm
that affects the very basis of the case, deprives the defendant of a valuable
right, or vitally affects a defensive theory. 
Allen, 253 S.W.3d at 264 & n.15; Olivas v. State, 202
S.W.3d 137, 144, 149 (Tex. Crim. App. 2006); Almanza,
686 S.W.2d at 172.

In
making an egregious harm determination, Athe
actual degree of harm must be assayed in light of the entire jury charge, the
state of the evidence, including the contested issues and weight of probative
evidence, the argument of counsel and any other relevant information revealed
by the record of the trial as a whole.@  Almanza, 686
S.W.2d at 171; see generally Hutch, 922 S.W.2d
at 172–74.  The purpose of this review is
to illuminate the actual, not just theoretical, harm to the accused.  Almanza, 686 S.W.2d at 174.  Egregious harm is a difficult standard to
prove and must be determined on a case-by-case basis.  Ellison v. State, 86 S.W.3d 226, 227
(Tex. Crim. App. 2002); Hutch, 922 S.W.2d at
171

A
trial court must give a jury “a written charge distinctly setting forth the law
applicable to the case.”  Tex. Code Crim. Proc. Ann. art. 36.14
(Vernon 2007).  Thus, the trial
court must instruct the jury on “each element of the offense or offenses
charged and include in its charge each statutory definition that affects the
meaning of an element of the offense.  If
a phrase, term, or word is statutorily defined, the trial court must submit the
statutory definition to the jury.”  McIlroy v. State, 188 S.W.3d
789, 797 (Tex. App.—Fort Worth 2006, no pet.) (citation
omitted); see Arline
v. State, 721 S.W.2d 348, 352 n.4 (Tex. Crim. App. 1986); Harkins v. State, 268 S.W.3d 740, 742–43
(Tex. App.—Fort Worth 2008, pet. ref’d).

Analysis

The
trial court did not define assault in its jury charge although that term is
statutorily defined.  See Tex. Penal Code Ann. § 22.01(a).  Therefore, the State concedes, and we hold,
that the trial court erred by not defining assault.  See McIlroy, 188 S.W.3d at 797; see also Lindsay v. State, 102 S.W.3d
223, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d)
(holding that a trial court erred by not defining “criminal responsibility”
when that term was statutorily defined).

“An
erroneous or incomplete jury charge, however, does not result in automatic
reversal of a conviction.”  Abdnor, 871 S.W.2d at 731.  Appellant contends that she suffered egregious
harm because the jury was “left with nothing but an inference of what
constitutes an ‘assault.’”  But although
the jury did not receive the definition of assault in the jury charge, the
State provided the definition during voir dire, in which the following colloquy
occurred:

          [THE
STATE]:  . . .  Can you think of a law, Ms. Burns, that would
-- that we have about protecting your body?  What are you protected from by the law?

          VENIREPERSON:  Assault.

          [THE
STATE]:  Okay.  Assault.  Getting hit.  And we’re going to talk more about assault. .
. .  So we consider that very important
that -- that your body is protected from unwanted intrusions by other people, I
guess, just like your home is protected. . . .

          . . . .

          [THE
STATE]:  Okay. I want to get you
comfortable with this idea, because it is rather unusual for most people.

          And what
is an assault?  And this is important, too,
to know this, because, again, what you see on TV and what you hear might be two
different things.  

          Mr.
Frederick, does it make sense to you that the definition, the legal definition of assault is intentionally o[r] knowingly causing
bodily injury to someone?  Does that
make sense?

          VENIREPERSON:  Yeah.

          [THE
STATE]:  That pretty much what you
thought it was going to be?

          VENIREPERSON:  Uh-huh.

          [THE
STATE]:  Did you know that the Texas definition of bodily injury is
physical pain, something that causes physical pain?  Have you ever heard that?

          VENIREPERSON:  No I
didn’t, no.

          [THE
STATE]:  What did you have in mind as far
as bodily injury goes?  What did you
think that was?  Bleeding?

          VENIREPERSON:  Marks,
bruising.

          [THE
STATE]:  Okay. And that’s one way to
commit bodily injury.  But the definition
of bodily injury in Texas says something that causes pain. . . .        

          . . . .

          [THE
STATE]:  . . .  If the person who’s been assaulted says, “That
caused me pain,” then that is enough for assault.

          . . . .

          [THE
STATE]:  . . .  So in
this case we’re talking about intentionally or knowingly doing something that
causes physical pain, okay, intentionally or knowingly doing something that
causes physical pain.  [Emphasis
added.]

We
conclude that the jury’s receipt of the correct definition of assault during
voir dire mitigated possible harm of that term being undefined in the jury
charge.  See Fulcher v. State, 274 S.W.3d
713, 717 (Tex. App.—San Antonio 2008, pet. ref’d)
(explaining that in “considering whether jury charge error caused egregious
harm, we consider . . . counsels’ statements during voir dire and at trial”); Cormier v. State, 955 S.W.2d 161, 163–64
(Tex. App.—Austin 1997, no pet.) (holding that there
was no egregious harm from the trial court’s failure to define a term in a
punishment-phase jury charge because there was “no reason to believe that the
jury did not remember the earlier definition” that it had been given); Jones v. State, 850 S.W.2d 236, 240–41
(Tex. App.—Fort Worth 1993, no pet.) (concluding that there was no egregious
harm from a jury charge that gave an incomplete instruction about parole law
when the State correctly explained the application of parole law to the jury in
its final argument); see also Mouton
v. State, 892 S.W.2d 234, 237 (Tex. App.—Beaumont 1995, pet. ref’d) (holding that there was no egregious harm even
though a jury charge on aggravated robbery, which required theft to be
committed as an underlying offense, did not define theft).

          Also, the “state of the evidence,
including the contested issues and the weight of the probative evidence,” shows
that the trial court’s omission of an assault definition was not egregiously
harmful.  See
Allen, 253 S.W.3d at 264.  The evidence prompted the
jury to believe either the State’s factual theory or appellant’s factual theory,
and it therefore created a conflict, but not an ambiguity, on whether an
assault occurred.  The jury could have
decided either that (1) appellant obviously committed assault because she ran
into the garage, pulled Dana by her hair to the ground, and caused her pain (including
bruising and soreness), or (2) appellant obviously did not commit assault because
after appellant threw eggs at the moving truck, Dana, Kayla, and Anthony beat
appellant up.  Thus, the jury could have
determined that appellant did not intentionally, knowingly, or recklessly cause
bodily injury to Dana (and therefore did not assault her) only if it believed
appellant’s version of the facts; the jury did not have any basis to believe
the testimony of the State’s witnesses and still conclude that the elements of
assault did not occur.

          In other words, there is no act that
appellant allegedly committed in this case that straddles the line on the penal
code’s definition of assault; she either committed assault (according to the
State’s witnesses) or did not commit assault (according to her own witnesses).  By returning a guilty verdict, the jury
indicated its choice to believe the State’s witnesses; the jury therefore would
have almost certainly convicted appellant even if the definition of assault had
been provided.  Stated another way, the
trial court’s failure to define assault did not vitally affect appellant’s
defensive theories that she had consent to enter the garage or that she did not
initiate the physical contact with Dana.  See id. at
264 & n.15.

          For these reasons, we hold that the
trial court’s error of not defining assault in the jury charge did not cause
egregious harm.  See Almanza,
686 S.W.2d at 171–72.  We overrule appellant’s second point.

Conclusion

          Having
overruled both of appellant’s points, we affirm the trial court’s judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL: 
LIVINGSTON, C.J.;
MCCOY and MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

                                                              

DELIVERED:  November 24, 2010











[1]See Tex. R. App. P. 47.4.





[2]The
State introduced a recording of the 911 call.





[3]Dana
said that there was “hair all over the garage,” that she was “hurt badly,” and
that she was sore with bruises for a couple of days after the fight.





[4]Dana
denied making that statement.





[5]Bryan testified
that he stayed in his car while appellant threw eggs at the truck, but then he
heard appellant screaming, saw some commotion, and found appellant on her back
in the garage while she was being beaten by Dana and Kayla.  Bryan conceded that he did not
personally know who started the fight between Dana and appellant.





[6]Paragraph one of
the indictment alleged an alternative theory of burglary; it stated that
appellant “did then and there intentionally, without the effective consent of
Dana Baker, . . . enter a habitation with intent to
commit assault.” See Tex. Penal
Code Ann. § 30.02(a)(1).  However, the jury charge instructed the jury
only about paragraph two.





[7]The
jury had reasons to disbelieve appellant’s testimony because she admitted that
she was drunk on the night in question and that she had initiated the dispute
that night by throwing eggs at the motorcycle shop and moving truck.





[8]Courts have held
that the variations of assault comprise different offenses.   See Dolkart v.
State, 197 S.W.3d 887, 893 (Tex. App.—Dallas 2006, pet. ref’d).





[9]Appellant
argues that the trial court’s failure to define assault was a “fundamental
error.”  Courts have indicated that a
“fundamental error” is one that has caused egregious harm under Almanza.  See Jefferson v. State, 99 S.W.3d 790, 793 (Tex. App.—Eastland
2003, pet. ref’d); Thomas v. State, 849 S.W.2d 405, 406–07 (Tex. App.—Fort Worth 1993,
no pet.).