Kimberly Denise Lewis McILROY a/k/a Kimberly Densie Lewis, Appellant,

v.

The STATE of Texas, State.

Nos. 2–04–308–CR, 2–04–309–CR.

Court of Appeals of Texas, Fort Worth.

March 9, 2006.

---

Helena F. Faulkner, Alton Estrada, Sam Williams, Asst. Criminal District Attys., Fort Worth, for State.

Panel B: DAUPHINOT, WALKER, and McCOY, JJ.

## OPINION

SUE WALKER, Justice.

### I. INTRODUCTION

The primary issue we address in this appeal is whether the State may read to the jury—over the defendant's objection—the type of prior felony offense the defendant committed when it is alleged in an indictment for possession of a firearm by a felon and when the defendant has agreed to stipulate to the prior felony and to her status as a felon. We hold that when a defendant charged with possession of a firearm by a felon stipulates to her status as a felon and to the prior felony offense and when she objects to the reading of the portion of the indictment describing the type of prior felony offense committed, it is error to permit the State to read those facts to the jury as they have no probative value and can serve only to prove the defendant's bad character or to provide a prejudicial conformity inference. Although the trial court here erred by permitting the State to read to the jury the portion of the indictment describing the type of prior felony offense Appellant Kimberly Denise McIlroy committed, because we cannot conclude that this error affected her substantial rights, we will affirm the trial court's judgment.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Sergeant Glen Verrett noticed a van parked in the street more than eighteen inches from the curb, a violation of state law. He stopped because there were no houses or businesses in the area and because the van was stopped in the road

The Kearney Law Firm, Wm. Reagan Wynn, Fort Worth, for Appellant.

Tim Curry, Criminal District Atty., Charles M. Mallin, Asst. Criminal District Atty., and Chief of the Appellate Division,

without headlights or hazard lights on. Sergeant Verrett approached the vehicle and found McIlroy unconscious and slumped over in the driver's seat. The driver's side door was locked, and McIlroy did not respond when the sergeant tapped on the window. Sergeant Verrett found the passenger side door unlocked, and he opened the door, turned off the ignition, and removed the keys. He noticed McIlroy's hand resting inside a clear plastic bag on the seat between her legs, and he removed the bag because he could see a metal object inside it. Sergeant Verrett exited the van and used the keys to unlock the driver's side door. He saw a "green, military-style holster" between the driver's side door and the seat, but he did not see a gun in plain view. He also smelled a strong odor of alcohol coming from McIlroy and saw an open beer can in the front console.

Sergeant Verrett attempted to wake McIlroy, and after a few minutes, McIlroy woke up enough to climb out of the van. Officer David DeLeon arrived on the scene and observed that McIlroy was unsteady, swaying, and slurring her speech and that she smelled of alcohol. Officer DeLeon arrested McIlroy for public intoxication. Sergeant Verrett then looked inside the clear plastic bag he had removed from McIlroy's lap and found a loaded magazine for a semi-automatic handgun, fifteen loose .22 rounds, and what appeared to be illegal drugs.

Sergeant Verrett determined that the van was registered to William Gray and that it had a flat tire. A subsequent search of the van revealed a semi-automatic handgun in the center console. Laboratory tests of the substances in the bag revealed that it contained 6.45 grams of methamphetamine and 0.98 grams of Xanax.

McIlroy was charged with the offenses of possession of a firearm by a felon and possession of four or more but less than 200 grams of methamphetamine, and a jury found her guilty of both offenses. The trial court assessed McIlroy's punishment at four years' confinement for each offense, to be served concurrently. In two issues, McIlroy contends that the trial court erred by allowing the State to read the entire indictment to the jury and by failing to provide the jury with a complete definition of the term "firearm."

### III. The Reading of the Entire Indictment

The indictment charging McIlroy with possession of a firearm by a felon alleged that McIlroy

did intentionally and knowingly possess a firearm and prior to said possession the defendant was convicted of the felony offense *of possession [of a] controlled substance of less than one gram, namely: methamphetamine*, to-wit: on the 10th day of August, 2001, in the 371st District Court of Tarrant County, Texas, in Cause Number 0768504D. [Emphasis added.].

McIlroy informed the trial court and the State before trial that she intended to stipulate to the previous felony conviction alleged in the indictment. She requested that the trial court prohibit the State from "alluding to or reading any part of the indictment beyond the fact that she has been convicted of a prior felony conviction," that is, prohibit the State from mentioning the portion of the indictment italicized above. The trial court denied her request. McIlroy renewed her objection after jury selection, and the trial court again overruled it. The State then read the entire indictment to the jury.

In her first point, McIlroy contends that the trial court erred by allowing the State

to read the legal description of her prior felony conviction to the jury because (1) she offered to stipulate to it and to her status as a felon and (2) the language in the indictment describing her prior felony conviction for possession of methamphetamine improperly prejudiced the jury against her in the present trial for possession of methamphetamine. The State maintains that it is statutorily authorized to read the entire indictment to the jury and, alternatively, that any error did not affect McIlroy's substantial rights.

### A. Specific Description of Prior Felony Offense

The elements of the offense of possession of a firearm by a felon are set forth in penal code section 46.04(a). TEX. PENAL CODE ANN. § 46.04(a) (Vernon Supp.2005). That section provides, "A person *who has been convicted of a felony* commits an offense if he possesses a firearm ... after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony." *Id.* (emphasis added). Thus, the particular type of prior felony offense committed by the defendant is not relevant; the State is simply required to prove the defendant's status as a felon to satisfy the prior-felony-conviction element of the offense. *State v. Mason,* 980 S.W.2d 635, 641 (Tex.Crim. App.1998).

■ Generally, "[t]he indictment or information shall be read to the jury by the attorney prosecuting." TEX.CODE CRIM. PROC. ANN. art. 36.01(a)(1) (Vernon Supp. 2005). But "[w]hen prior convictions are alleged [in the indictment] for purposes of enhancement only and are not jurisdictional, that portion of the indictment or information reciting such convictions shall not be read until the hearing on punishment is held." *Id.* Thus, article 36.01(a)(1) suggests by negative implication that when prior convictions are alleged in the indict-

ment for purposes other than enhancement, the State may read the prior conviction allegations to the jury, although the statute does not appear to require such a reading. *Tamez v. State,* 11 S.W.3d 198, 201 (Tex.Crim.App.2000).

■ The reading of the indictment serves two purposes: it ensures that the accused is informed of the charges against him, and it ensures that the jury is informed of the precise terms of the particular charge against the accused. *Id.* at 200–01. The first purpose served by reading the indictment is not furthered when the defendant stipulates to particular charges; the defendant is obviously aware of the charges against her if she stipulates to them. *Id.* at 201. The second rationale for reading the indictment requires the trial court to strike a balance between providing the jury with an understanding of the charges against the defendant while preventing the jury from unduly focusing on substantially prejudical prior convictions as evidence of the defendant's "bad character." *Id.* (prohibiting State from reading six prior DWI offenses alleged in indictment; State permitted to read only two jurisdictional prior DWIs necessary for offense of felony DWI).

In the present case, McIlroy stipulated that she was a convicted felon. She stipulated to the prior felony conviction included in the indictment, and the State accepted her stipulation. The trial court nonetheless, over McIlory's objection, allowed the State to read to the jury the entire indictment, including the specific description of McIlroy's prior felony conviction—for "possession of a controlled substance less than one gram, namely: methamphetamine." But the offense of unlawful possession of a firearm requires the State to prove only McIlroy's status as a convicted felon, not the particular prior felony offense that McIlroy commit-

ted. *See Mason,* 980 S.W.2d at 641. Thus, the dual purposes underlying the reading of the indictment could have been accomplished here by having the State omit from its reading to the jury the portion of the indictment specifically describing McIlroy's prior felony conviction as "possession of a controlled substance less than one gram, namely: methamphetamine," as McIlroy requested. McIlroy understood the charge against her: she stipulated to the prior felony; the jury would have understood the charge against McIlroy even if the State had omitted reading the description of the nature of her prior felony offense, and the jury would not have been potentially prejudiced by the nature of McIlroy's prior felony conviction.

Although the trial court could have required the State to omit from its reading of the indictment to the jury the specific type of felony offense previously committed by McIlroy, the question remains whether its failure to do so constituted an abuse of discretion. The State argues that based on article 36.01, *Tamez,* and *Herring v. State,*[1] it was authorized to read the entire indictment to the jury, including the specific description of McIlroy's prior felony conviction.

While article 36.01 does mandate that the indictment be read, the court of criminal appeals in *Tamez* recognized that this statutory mandate must be balanced against rule of evidence 403's proscription against placing a defendant's prior convictions before the jury at the guilt-innocence phase if there is a strong likelihood that the jury may improperly use the prior convictions in reaching its present verdict. *Tamez,* 11 S.W.3d at 202; *see* TEX.R. EVID. 403. Consequently, in *Tamez,* the court of criminal appeals held that in Tamez's DWI trial the State could not read to the jury the six prior DWIs alleged in the indictment against Tamez. *Id.* at 202–03. The court of criminal appeals held that the State could read to the jury only the two jurisdictional prior DWIs alleged in the indictment. *Id.* Permitting the State to read the four other DWI offenses alleged in the indictment created too great a likelihood that the jury would be "improperly swayed to convict appellant [of DWI] after the State presented conviction after conviction [for DWI]." *Id.* at 202. Thus, *Tamez* expressly prohibits the State from reading to the jury information in the indictment concerning the defendant's criminal history that is inflammatory and more prejudicial than probative as violative of rule of evidence 403. *Id.* at 202–03 (holding that "any prior convictions beyond the two jurisdictional elements *should not be read* ... during the State's case-in-chief—as long as the defendant stipulates to the two prior convictions—as they are without probative value and can serve only to improperly prove the defendant's 'bad character' ") (emphasis added). In *Herring,* the defendant did not challenge in the court of criminal appeals the appellate court's ruling that the trial court did not abuse its discretion by permitting the State to read to the jury the portion of his indictment for failure to report as a sex offender that described the type of underlying sex offense he had committed. 147 S.W.3d at 391, 395–96. Justice Womack's concurring opinion specifically noted that this issue was not raised in the court of criminal appeals. *Id.* at 397 (Womack, J. concurring). The majority in *Herring* nonetheless noted that the inference raised by Herring's prior conviction for attempted indecency with a child was simply that Herring was a criminal in general, as opposed to the stronger, more inflammatory

---

1.  147 S.W.3d 390 (Tex.Crim.App.2004).

"conformity inference" that arises from substantially similar offenses such as in *Tamez* where both the charged and prior offenses were DWIs. *Id.* at 396.

Accordingly, while article 36.01, *Tamez*, and *Herring* all recognize that the State is entitled to read to the jury the portions of the indictment that the State is required to prove to obtain a conviction, nothing in article 36.01, *Tamez*, or *Herring* authorizes the State during its case-in-chief to read nonjurisdictional information from the indictment concerning the defendant's criminal history when that information is prejudicial and has no probative value. *See Herring*, 147 S.W.3d at 395–96; *Tamez*, 11 S.W.3d at 202–03. And when a defendant's criminal history involves crimes similar to the charges in the pending case, the risk of unfair prejudice from providing the jury with this information during the State's case-in-chief is especially obvious. *Herring*, 147 S.W.3d at 396 n. 21.

Finally, the Supreme Court's ruling in *Old Chief v. United States* likewise indicates that it is error to permit the State to read to the jury—over the defendant's timely objection—the type of prior felony conviction that the defendant committed to attain felon status in a prosecution for possession of a firearm by a felon. 519 U.S. 172, 174, 117 S.Ct. 644, 647, 136 L.Ed.2d 574 (1997). The Supreme Court in *Old Chief* framed the issue presented to it as "whether a district court abuses its discretion if it spurns [a defendant's offer to stipulate to a prior felony conviction] and admits the full record of a prior judgment, when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations." *Id.* at 174, 117 S.Ct. at 647.

Old Chief was prosecuted in a joint trial for the offenses of assault and possession of, and violence with, a firearm. *Id.* at 175, 117 S.Ct. at 648. Old Chief had been

previously convicted of the felony offense of assault causing serious bodily injury, and prior to trial he requested that the government refrain from mentioning, by reading the indictment or at any other time during trial, the nature of his prior felony conviction except to say that he had been convicted of a crime punishable by imprisonment exceeding one year. *Id.* at 175, 117 S.Ct. at 647–48. Old Chief explained that he was concerned that he would be unfairly prejudiced and that the jury would not hold the government to its burden of proof concerning the present charges if it learned that he had been previously convicted of assault causing serious bodily injury. *Id.* After a lengthy discussion, the Supreme Court agreed with Old Chief and held that the general rule when "proof of convict status is at issue," such as in a prosecution for possession of a firearm by a felon, is that when the prior felony offense is for an offense likely to support conviction on some improper ground and when the defendant agrees to stipulate to the prior offense, then the risk of unfair prejudice outweighs the probative value of disclosing the type of prior offense. *Id.* at 191–192, 117 S.Ct. at 655–656. When a prior conviction is for a gun crime or for a crime similar to other charges in a pending case, the risk of unfair prejudice is especially obvious. *Id.* at 185, 117 S.Ct. at 652. Therefore, the trial court abuses its discretion by placing such information before the jury in light of the defendant's stipulation. *Id.* at 191, 117 S.Ct. at 655.

Here, in addition to the offense of possession of a firearm by a felon, McIlroy was charged with possession of methamphetamine. The prior conviction alleged by the State in the indictment to demonstrate McIlroy's status as a felon was a previous felony conviction for possession of methamphetamine. So, just like Old

Chief, McIlroy's status as a felon was alleged to result from the prior commission of the same felony offense she was being tried for committing; McIlroy was being tried for possession of methamphetamine and she attained felon status as a result of a prior conviction for possession of methamphetamine while Old Chief was being tried for assault and he attained felon status as a result of a prior conviction for assault. Old Chief offered to stipulate to the fact of his prior felony conviction. *Id.* at 172, 117 S.Ct. at 646. McIlroy offered to stipulate, and the State accepted her stipulation, to the fact of her prior felony conviction. For the same reasons the Supreme Court held that the name and nature of Old Chief's prior felony offense were not admissible in his prosecution, the name and nature of McIlroy's prior felony offense were not admissible in the present case. *Id.* at 191–92, 117 S.Ct. at 655–56. We hold that the trial court abused its discretion by permitting the State to read to the jury the portion of the indictment describing the prior felony offense committed by McIlroy as "possession of a controlled substance less than one gram, namely: methamphetamine." *See Tamez,* 11 S.W.3d at 201.

### B. Harm Analysis

■ Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment. Tex.R.App. P. 44.2. Because the error is nonconstitutional, we apply rule 44.2(b) and disregard the error if it did not affect appellant's substantial rights. Tex. R.App. P. 44.2(b); *see Herring,* 147 S.W.3d at 396; *Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App.1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999); *Coggeshall v. State,* 961 S.W.2d 639, 642–43 (Tex.App.-Fort Worth 1998, pet. ref'd); *see also Tamez v. State,* 48 S.W.3d 295, 296 (Tex.App.-

San Antonio 2001, no pet.) (op. on remand) (applying a Rule 44.2(b) analysis to the trial court's error in allowing the State to read the entire indictment to the jury).

■ A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)); *Coggeshall,* 961 S.W.2d at 643. In making this determination, we review the record as a whole. *See Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998). When performing a harm analysis under rule 44.2(b), we consider "any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, [and] the character of the alleged error and how it might be considered in connection with other evidence in the case." *Morales v. State,* 32 S.W.3d 862, 867 (Tex.Crim.App.2000). We may also consider closing arguments, evidence of the defendant's guilt, and the jury instructions. *See Motilla v. State,* 78 S.W.3d 352, 355–56 (Tex.Crim.App.2002); *Morales,* 32 S.W.3d at 867.

Although the State read the entire indictment to the jury, during the remainder of its case-in-chief, the State did not mention the name or nature of McIlroy's prior felony conviction. Instead, to satisfy its burden of proving a prior felony conviction, the State simply read into evidence the parties' stipulation concerning McIlroy's prior felony conviction, which did not mention that the conviction was for possession of less than one gram of methamphetamine. Likewise, based on an agreement between the parties, the specific description of McIlroy's prior felony conviction for possession of less than one gram of methamphetamine was omitted from the jury charge. The State made no attempt to

introduce the judgment from her prior felony conviction or to introduce evidence of that conviction, and the State did not mention the name of the prior conviction in its jury arguments.

Further, overwhelming evidence exists supporting McIlroy's present conviction for possession of methamphetamine and for possession of a firearm by a felon. Sergeant Verrett testified that he found McIlroy unconscious with her hand inside a plastic bag that contained a loaded magazine, .22 rounds, and illegal drugs, including methamphetamine. The magazine fit the semi-automatic handgun found in the center console of the van. The forensic chemist who examined the substances found in the clear bag testified that the substances were illegal drugs weighing more than four and less than 200 grams.

We conclude that, in the context of the entire case against McIlroy, the trial court's error in allowing the State to read the entire indictment, including the specific description of McIlroy's prior felony conviction, did not have a substantial or injurious effect on the jury's verdict and did not affect McIlroy's substantial rights. *See King*, 953 S.W.2d at 271. Thus, we disregard the error. *See* TEX.R.APP. P. 44.2(b). We overrule McIlroy's first point.

### IV. NO ERROR IN JURY CHARGE ON DEFINITION OF FIREARM

In her second point, McIlroy contends that the trial court erred by failing to instruct the jury on the complete definition of a firearm under the penal code. A "firearm" is defined in the penal code as

any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use. *Firearm does not include a firearm that may have, as an integral part, a folding*

*knife blade or other characteristics of weapons made illegal by this chapter and that is:*

> *(A) an antique or curio firearm manufactured before 1899; or*

> *(B) a replica of an antique or curio firearm manufactured before 1899, but only if the replica does not use rim fire or center fire ammunition.*

TEX. PENAL CODE ANN. § 46.01(3) (Vernon 2003) (emphasis added). The trial court did not include the italicized portion of the definition in its charge to the jury, and although McIlroy did not object to the omission of this language, she claims the failure to submit it was error.

When examining alleged jury charge error, we first look to see if the error actually occurred and if the error was preserved. *See Hutch v. State*, 922 S.W.2d 166, 170–71 (Tex.Crim.App.1996). Preserved error warrants reversal if any harm is shown. *Id.* On the other hand, if the alleged error is raised for the first time on appeal, then the appellant must show that the harm resulting from the error was egregious, or so harmful that the appellant was denied a fair and impartial trial. *Id.* at 171; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g).

The trial court's charge to the jury must set forth the law applicable to the case. TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.2005). Thus, the trial court must instruct the jury on each element of the offense or offenses charged and include in its charge each statutory definition that affects the meaning of an element of the offense. *Murphy v. State*, 44 S.W.3d 656, 661 (Tex.App.-Austin 2001, no pet.). If a phrase, term, or word is statutorily defined, the trial court must submit the statutory definition to the jury. *Arline v. State*, 721 S.W.2d 348, 352 n. 4

(Tex.Crim.App.1986); *Murphy,* 44 S.W.3d at 661.

The penal code distinguishes exceptions to an offense from defenses to an offense. *See* TEX. PENAL CODE ANN. §§ 2.02–.03 (Vernon 2003). The State must negate an exception to an offense, but it is not required to negate a defense. *See id.* §§ 2.02(b); 2.03(b). Further, the State must only negate exceptions that are specifically defined as exceptions. *See Ex parte Davis,* 542 S.W.2d 192, 197 (Tex. Crim.App.1976) (holding that the State need not negate implied exceptions); *Briggs v. State,* 746 S.W.2d 331, 332–33 (Tex.App.-Dallas 1988, pet. ref'd) (same); *Kirk v. State,* 643 S.W.2d 190, 194 (Tex. App.-Austin 1982, pet. ref'd) (stating that it is only necessary to negate an exception that does not fall within a statutory definition of the offense).

The language in section 46.01(3) of the penal code providing that a firearm does not include an antique or curio firearm, or replica thereof, is not labeled as an exception. *See* TEX. PENAL CODE ANN. § 46.01(3); *Davis,* 542 S.W.2d at 197; *Briggs,* 746 S.W.2d at 332–33, *Kirk,* 643 S.W.2d at 194. In fact, it is settled law that the State is not required to prove that a firearm is not an antique or curio firearm, or replica thereof. *Jackson v. State,* 575 S.W.2d 567, 569 (Tex.Crim.App. [Panel Op.] 1979) (holding that "the possession of a weapon as an antique or curio was not made an exception requiring the State to negate it"); *Cantu v. State,* 802 S.W.2d 1, 2 (Tex.App.-San Antonio 1990, pet. ref'd) (same); *cf. Scott v. State,* 571 S.W.2d 893, 895 (Tex.Crim.App. [Panel Op.] 1978) (holding that State's failure to introduce evidence of the firearm's date of manufacture did not render the evidence insufficient to support a verdict of guilty of possession of firearm by felon). Therefore, the defendant has the burden of proving that the gun was an antique as defined in the penal code. *Cantu,* 802 S.W.2d at 2.

A defensive issue is not law applicable to the case unless the defendant timely requests the issue or objects to the omission of the issue in the jury charge. *See Posey v. State,* 966 S.W.2d 57, 61–62 (Tex.Crim.App.1998); *see also* TEX.CODE CRIM. PROC. ANN. art. 36.14. Article 36.14 imposes no duty on the trial court to *sua sponte* instruct the jury on unrequested defensive issues because these issues are not "law applicable to the case"; they are simply issues that were not raised at trial. *Posey,* 966 S.W.2d at 61–62.

In the present case, McIlroy never raised the issue of whether the gun found in the van was actually an antique or curio, there was no evidence at trial to suggest that the gun was an antique or curio, and McIlroy did not object to the definition of a firearm in the jury charge. *See id.* Accordingly, we hold that the trial court did not err by omitting from the jury charge definition of a firearm the defensive issue that a firearm does not include an antique or curio firearm, or replica thereof. *See* TEX.R.APP. P. 33.1; *Posey,* 966 S.W.2d at 61–62. We overrule McIlroy's second point.

### V. CONCLUSION

Having overruled both of McIlroy's points, we affirm the trial court's judgment.