

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00079-CR

TINA MARIE BAKER                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Tina Marie Baker appeals her conviction for burglary of a habitation. In two points, she argues that the evidence is insufficient to support the jury's verdict and that the trial court erred by failing to define an element of the offense in the jury charge. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## Background Facts

**The State's version of the facts**

On January 29, 2009, Zach Oakley, a high school student, lived at a house on Bentwater Parkway in Granbury. That night, Zach and his mother, Dana Baker, were inside the house's open attached garage while they were packing a moving truck. Zach's stepdad and Dana's husband, Anthony Baker, was sleeping in his room. Zach's cousin, Kayla, was packing boxes in the kitchen.

At about midnight, appellant, who is Anthony's ex-wife, arrived at the house, threw eggs at the moving truck, yelled an obscenity at Dana, and ran into the garage. Appellant grabbed Dana's hair and pulled her to the ground, and Zach ran into the house, called 911, and woke up Anthony.[2] When Zach came back to the garage, he saw appellant and Dana fighting on the ground while Kayla and Anthony were trying to pull them apart.[3]

Anthony eventually pulled appellant off of Dana, and when Zach told appellant that the police were coming, appellant quickly left in a car with Bryan Anderson, who had come to the house with her. Because Zach had given the dispatcher the car's license plate number, the police found appellant and Bryan. Appellant, who smelled like alcohol, admitted that she had thrown eggs at the moving truck. She also initially told an officer that she had been assaulted by

---

[2]The State introduced a recording of the 911 call.

[3]Dana said that there was "hair all over the garage," that she was "hurt badly," and that she was sore with bruises for a couple of days after the fight.

2

three females but later told the officer that she was assaulted by two females and a male. When another officer searched the car that appellant and Anderson were in, he found an open alcoholic drink and unopened alcoholic drinks. Anthony, Dana, Zach, and Kayla gave statements to a Hood County Sheriff's Department sergeant, and the sergeant directed appellant's arrest.

**Appellant's version of the facts**

On January 29, 2009, appellant and Bryan became drunk. Appellant bought some eggs, threw them at Anthony's motorcycle shop, and then went with Bryan to the Bentwater Parkway house. When they arrived there, appellant became upset and threw eggs at the moving truck. She then heard Dana yell, "Bring it on, bitch," and Dana and appellant moved toward each other.[4] Appellant met Dana outside the garage, at which time Kayla pushed appellant from behind. Appellant held Dana's hair to defend herself while Dana, Kayla, and Anthony kicked and punched her. Appellant and Bryan eventually left and were stopped and arrested while they were on their way to the sheriff's department to report what had happened.[5]

---

[4]Dana denied making that statement.

[5]Bryan testified that he stayed in his car while appellant threw eggs at the truck, but then he heard appellant screaming, saw some commotion, and found appellant on her back in the garage while she was being beaten by Dana and Kayla. Bryan conceded that he did not personally know who started the fight between Dana and appellant.

**Procedural history**

A grand jury indicted appellant for burglary of a habitation. Appellant pled not guilty, but a jury found her guilty. After hearing evidence on punishment, the jury assessed eight years' confinement and a $6,000 fine but recommended suspension of that sentence so that appellant could be placed on community supervision. The trial court signed a judgment incorporating the jury's punishment recommendation, and appellant filed notice of this appeal.

## Evidentiary Sufficiency

In her first point, appellant argues that the evidence is insufficient to show that she committed burglary.

**Standard of review and applicable law**

In our review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007).

Paragraph two of the indictment alleged that appellant "did then and there intentionally or knowingly, without the effective consent of Dana Baker, the owner thereof, enter a habitation and did attempt to commit or commit assault." *See* Tex. Penal Code Ann. § 30.02(a)(3) (Vernon 2003).[6] The penal code states that a "habitation" includes "each separately secured or occupied portion of the structure" and "each structure appurtenant to or connected with the structure." *Id.* § 30.01(1) (Vernon 2003); *see White v. State*, 630 S.W.2d 340, 342 (Tex. App.—Houston [1st Dist.] 1982, no pet.) (holding that a house's attached garage

---

[6]Paragraph one of the indictment alleged an alternative theory of burglary; it stated that appellant "did then and there intentionally, without the effective consent of Dana Baker, . . . enter a habitation with intent to commit assault." *See* Tex. Penal Code Ann. § 30.02(a)(1). However, the jury charge instructed the jury only about paragraph two.

5

was a habitation under the penal code's definition). An "owner" includes someone who has possession of property "or a greater right to possession of the property than the actor." Tex. Penal Code Ann. § 1.07(a)(35)(A) (Vernon Supp. 2010); *Ronk v. State*, 250 S.W.3d 467, 470 (Tex. App.—Waco 2008, pet. ref'd).

**Analysis**

Appellant argues that the State failed to prove that (1) she intended to assault Dana inside a habitation, (2) the garage was not open to the public, and (3) appellant went into the garage voluntarily (she asserts that she was pushed into it). The facts recited above presented the jury with conflicting theories about how appellant entered the garage and whether she assaulted Dana or merely defended herself. But in our evidentiary sufficiency review, we must presume that the jury resolved any conflicting inferences in favor of the prosecution and defer to that resolution.[7] *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

If the jury believed the witnesses called by the State and disbelieved appellant's and Bryan's testimony, it could have rationally determined that appellant ran into the open garage, grabbed Dana's hair, and pulled her to the ground, causing her pain. This evidence shows that appellant attempted to commit or committed assault in the garage. *See* Tex. Penal Code Ann.

---

[7]The jury had reasons to disbelieve appellant's testimony because she admitted that she was drunk on the night in question and that she had initiated the dispute that night by throwing eggs at the motorcycle shop and moving truck.

6

§ 22.01(a)(1) (Vernon Supp. 2010) (stating that a person can commit assault by intentionally, knowingly, or recklessly causing bodily injury to another); *id.* § 1.07(a)(8) (stating that "bodily injury" includes "physical pain"); *see also Thomas v. State*, 303 S.W.3d 331, 333–34 (Tex. App.—El Paso 2009, no pet.) (holding that the evidence was sufficient to prove assault when a wife felt pain after her husband pushed her, slapped her back, and caused her to stumble).

Appellant also notes that the garage was open and "[a]nyone could freely walk up and into" it. But appellant has not cited authority showing that the garage's door being open changed its status as a habitation. *Cf. White*, 630 S.W.2d at 341–42 (holding that a garage that did not have a front door was a habitation even though it was not enclosed); *see also Tennyson v. State*, No. 11-92-00107-CR, 1993 WL 13141619, at *2 (Tex. App.—Eastland June 24, 1993, no pet.) (not designated for publication) (holding that an attached carport, which was open on three sides, qualified as a habitation). Also, even though appellant lived at the Bentwater Parkway house before she divorced Anthony, Dana and Anthony testified that appellant did not have permission to be in the garage, and Anthony said that he had told appellant not to come there. Appellant admitted that she knew that Dana did not want her to be there. Thus, the jury could have rationally found that despite the garage's door being opened, it qualified as a habitation that appellant did not have consent to enter.

For all of these reasons, we hold that the evidence is sufficient to support appellant's conviction. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. We overrule appellant's first point.

## Jury Charge Error

In her second point, appellant contends that the trial court erred by failing to define "assault" in the jury charge when the jury had to find that appellant attempted to commit or committed assault to convict her of burglary.

**Standard of review and applicable law**

A person commits assault when the person intentionally, knowingly, or recklessly causes bodily injury to another; intentionally or knowingly threatens another with imminent bodily injury; or intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.[8] Tex. Penal Code Ann. § 22.01(a). Appellant did not object to the omission of an assault definition at trial.

Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *see also Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009). Initially, we must determine whether error occurred; if it did, we must then evaluate whether

---

[8]Courts have held that the variations of assault comprise different offenses. *See Dolkart v. State*, 197 S.W.3d 887, 893 (Tex. App.—Dallas 2006, pet. ref'd).

8

sufficient harm resulted from the error to require reversal. *Abdnor*, 871 S.W.2d at 731–32.

If there is error in the court's charge but the appellant did not preserve it at trial, we must decide whether the error was so egregious and created such harm that the appellant did not have a fair and impartial trial—in short, that "egregious harm" has occurred. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g);[9] *see* Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2006); *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). Egregious harm is the type and level of harm that affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Allen*, 253 S.W.3d at 264 & n.15; *Olivas v. State,* 202 S.W.3d 137, 144, 149 (Tex. Crim. App. 2006); *Almanza,* 686 S.W.2d at 172.

In making an egregious harm determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see generally Hutch*, 922 S.W.2d at 172–

---

[9]Appellant argues that the trial court's failure to define assault was a "fundamental error." Courts have indicated that a "fundamental error" is one that has caused egregious harm under *Almanza*. *See Jefferson v. State*, 99 S.W.3d 790, 793 (Tex. App.—Eastland 2003, pet. ref'd); *Thomas v. State*, 849 S.W.2d 405, 406–07 (Tex. App.—Fort Worth 1993, no pet.).

9

The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174. Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); *Hutch*, 922 S.W.2d at 171

A trial court must give a jury "a written charge distinctly setting forth the law applicable to the case." Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon 2007). Thus, the trial court must instruct the jury on "each element of the offense or offenses charged and include in its charge each statutory definition that affects the meaning of an element of the offense. If a phrase, term, or word is statutorily defined, the trial court must submit the statutory definition to the jury." *McIlroy v. State*, 188 S.W.3d 789, 797 (Tex. App.—Fort Worth 2006, no pet.) (citation omitted); *see Arline v. State*, 721 S.W.2d 348, 352 n.4 (Tex. Crim. App. 1986); *Harkins v. State*, 268 S.W.3d 740, 742–43 (Tex. App.—Fort Worth 2008, pet. ref'd).

**Analysis**

The trial court did not define assault in its jury charge although that term is statutorily defined. *See* Tex. Penal Code Ann. § 22.01(a). Therefore, the State concedes, and we hold, that the trial court erred by not defining assault. *See McIlroy*, 188 S.W.3d at 797; *see also Lindsay v. State*, 102 S.W.3d 223, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (holding that a trial court erred by not defining "criminal responsibility" when that term was statutorily defined).

"An erroneous or incomplete jury charge, however, does not result in automatic reversal of a conviction." *Abdnor*, 871 S.W.2d at 731. Appellant contends that she suffered egregious harm because the jury was "left with nothing but an inference of what constitutes an 'assault.'" But although the jury did not receive the definition of assault in the jury charge, the State provided the definition during voir dire, in which the following colloquy occurred:

> [THE STATE]: . . . Can you think of a law, Ms. Burns, that would -- that we have about protecting your body? What are you protected from by the law?
>
> VENIREPERSON: Assault.
>
> [THE STATE]: Okay. Assault. Getting hit. And we're going to talk more about assault. . . . So we consider that very important that -- that your body is protected from unwanted intrusions by other people, I guess, just like your home is protected. . . .
>
> . . . .
>
> [THE STATE]: Okay. I want to get you comfortable with this idea, because it is rather unusual for most people.
>
> And what is an assault? And this is important, too, to know this, because, again, what you see on TV and what you hear might be two different things.
>
> Mr. Frederick, does it make sense to you that the definition, *the legal definition of assault is intentionally o[r] knowingly causing bodily injury to someone?* Does that make sense?
>
> VENIREPERSON: Yeah.
>
> [THE STATE]: That pretty much what you thought it was going to be?
>
> VENIREPERSON: Uh-huh.

11

[THE STATE]: Did you know that *the Texas definition of bodily injury is physical pain, something that causes physical pain?* Have you ever heard that?

VENIREPERSON: No I didn't, no.

[THE STATE]: What did you have in mind as far as bodily injury goes? What did you think that was? Bleeding?

VENIREPERSON: Marks, bruising.

[THE STATE]: Okay. And that's one way to commit bodily injury. But the definition of bodily injury in Texas says something that causes pain. . . .

. . . .

[THE STATE]: . . . If the person who's been assaulted says, "That caused me pain," then that is enough for assault.

. . . .

[THE STATE]: . . . *So in this case we're talking about intentionally or knowingly doing something that causes physical pain, okay, intentionally or knowingly doing something that causes physical pain.* [Emphasis added.]

We conclude that the jury's receipt of the correct definition of assault during voir dire mitigated possible harm of that term being undefined in the jury charge. *See Fulcher v. State*, 274 S.W.3d 713, 717 (Tex. App.—San Antonio 2008, pet. ref'd) (explaining that in "considering whether jury charge error caused egregious harm, we consider . . . counsels' statements during voir dire and at trial"); *Cormier v. State*, 955 S.W.2d 161, 163–64 (Tex. App.—Austin 1997, no pet.) (holding that there was no egregious harm from the trial court's failure to define a term in a punishment-phase jury charge because there was "no reason to believe that the jury did not remember the earlier definition" that it had been given);

12

*Jones v. State*, 850 S.W.2d 236, 240–41 (Tex. App.—Fort Worth 1993, no pet.) (concluding that there was no egregious harm from a jury charge that gave an incomplete instruction about parole law when the State correctly explained the application of parole law to the jury in its final argument); *see also Mouton v. State*, 892 S.W.2d 234, 237 (Tex. App.—Beaumont 1995, pet. ref'd) (holding that there was no egregious harm even though a jury charge on aggravated robbery, which required theft to be committed as an underlying offense, did not define theft).

Also, the "state of the evidence, including the contested issues and the weight of the probative evidence," shows that the trial court's omission of an assault definition was not egregiously harmful. *See Allen*, 253 S.W.3d at 264. The evidence prompted the jury to believe either the State's factual theory or appellant's factual theory, and it therefore created a conflict, but not an ambiguity, on whether an assault occurred. The jury could have decided either that (1) appellant obviously committed assault because she ran into the garage, pulled Dana by her hair to the ground, and caused her pain (including bruising and soreness), or (2) appellant obviously did not commit assault because after appellant threw eggs at the moving truck, Dana, Kayla, and Anthony beat appellant up. Thus, the jury could have determined that appellant did not intentionally, knowingly, or recklessly cause bodily injury to Dana (and therefore did not assault her) only if it believed appellant's version of the facts; the jury did

13

not have any basis to believe the testimony of the State's witnesses and still conclude that the elements of assault did not occur.

In other words, there is no act that appellant allegedly committed in this case that straddles the line on the penal code's definition of assault; she either committed assault (according to the State's witnesses) or did not commit assault (according to her own witnesses). By returning a guilty verdict, the jury indicated its choice to believe the State's witnesses; the jury therefore would have almost certainly convicted appellant even if the definition of assault had been provided. Stated another way, the trial court's failure to define assault did not vitally affect appellant's defensive theories that she had consent to enter the garage or that she did not initiate the physical contact with Dana. *See id.* at 264 & n.15.

For these reasons, we hold that the trial court's error of not defining assault in the jury charge did not cause egregious harm. *See Almanza*, 686 S.W.2d at 171–72. We overrule appellant's second point.

## Conclusion

Having overruled both of appellant's points, we affirm the trial court's judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: November 24, 2010

14