

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-17-00083-CR

_____

TRAVIS HUNTER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1469509D

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

A jury convicted Travis Hunter of unlawful possession of a firearm by a felon. During a bench trial on punishment, the trial court found the State's habitual-offender-enhancement allegation true and sentenced Hunter to thirty years' imprisonment. On appeal,[1] Hunter argues that the trial court erred (1) by admitting the 9-1-1 telephone call over the objection that it violated Hunter's right to confront witnesses against him, (2) by overruling Hunter's objection to the State's use of his post-arrest silence, and (3) and by allowing the State to inform the jury of the nature of his prior conviction.

We find that admission of the 9-1-1 call did not violate the Confrontation Clause, that Hunter did not preserve his complaint relating to post-arrest silence, and that Hunter was not harmed by the admission of the nature of his prior conviction. Accordingly, we affirm the trial court's judgment.

## I. Admission of the 9-1-1 Call Did Not Violate the Confrontation Clause

A witness named Melvin Walker borrowed an unidentified person's cell phone to call 9-1-1. Walker reported to the dispatcher that a man standing in front of a Salvation Army building in Fort Worth, Texas, was carrying a gun in his backpack and had shown it to another man. Walker confirmed that he had also seen the weapon, said that the man with the gun was drinking a beer, and described the man as an African-American male with braids in his hair and tattoos on his neck. Walker told the dispatcher that the man was wearing a black hat, white muscle t-shirt, black shorts,

---

[1]Originally appealed to the Second Court of Appeals in Fort Worth, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Second Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

and blue shoes and was carrying a black backpack. Despite its best efforts, the State was unable to locate Walker after he had made the 9-1-1 call. Hunter objected to the introduction of the call on the ground that it violated his right to confront a witness against him. The trial court overruled Hunter's objection.

"The Confrontation Clause gives a criminal defendant the right 'to be confronted with the witnesses against him.'" *Coronado v. State*, 351 S.W.3d 315, 319 (Tex. Crim. App. 2011) (quoting U.S. CONST. amend. VI). It "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Id.* (quoting *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988)). If "testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 322 (quoting *Crawford v. Washington*, 541 U.S. 36, 68–69 (2004)). "Thus, when testimonial statements are at issue, and the declarant is not making those statements from the witness stand at trial, 'the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.'" *Id.* at 323 (quoting *Crawford*, 541 U.S. at 68). However, the Confrontation Clause does not apply to nontestimonial statements. *See Sanchez v. State*, 354 S.W.3d 476, 485 (Tex. Crim. App. 2011).

Because it is undisputed that Hunter did not have the opportunity to cross-examine Walker, Hunter's first point of error argues that the trial court erred in overruling his objection because the 9-1-1 call constituted testimonial statements. We review alleged violations of the Confrontation Clause, including whether a statement is testimonial or nontestimonial de novo. *Wall v. State*, 184

3

S.W.3d 730, 742 (Tex. Crim. App. 2006). The United States Supreme Court explained the distinction as follows:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington*, 547 U.S. 813, 822 (2006). "[T]he primary focus in determining whether an out-of-court statement is 'testimonial' is on the objective purpose of the interview or interrogation, not on the declarant's expectations." *Coronado*, 351 S.W.3d at 324.

A nonexhaustive list of factors to consider in determining if statements were testimonial include:

> 1) whether the situation was still in progress; 2) whether the questions sought to determine what is presently happening as opposed to what happened in the past; 3) whether the primary purpose of the interrogation was to render aid rather than to memorialize a possible crime; 4) whether the questioning was conducted in a separate room, away from the alleged attacker; and 5) whether the events were deliberately recounted in a step-by-step fashion.

*Vinson v. State*, 252 S.W.3d 336, 339 (Tex. Crim. App. 2008) (citing *Davis*, 547 U.S. at 829–30).

"Statements made to police during contact initiated by a witness at the beginning of an investigation are generally not considered testimonial." *Cook v. State*, 199 S.W.3d 495, 498 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Spencer v. State*, 162 S.W.3d 877, 883 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd)); *see Garcia v. State*, 212 S.W.3d 877, 883 (Tex. App.—Austin 2006, no pet.). For this reason, 9-1-1 calls initiated to summon police assistance are generally nontestimonial because they are "a cry for help" or "the provision of information

enabling officers to end a threatening situation." *Davis*, 547 U.S. at 832; *Cook*, 199 S.W.3d at 498.

Walker's statements were not made pursuant to police questioning or interrogation, nor were they made to establish or to prove past events potentially relevant to later criminal prosecution. Here, the objective purpose of Walker's statements was to obtain police assistance in response to a potential crime or situation still in progress—the brandishing of a weapon by Hunter and his continued presence in the area. *See Cook*, 199 S.W.3d at 498; *Davis*, 547 U.S. at 832. The contact was initiated by Walker, it was informal, and it occurred at the beginning of an investigation. Therefore, Walker's statements were not testimonial, and the trial court did not err by denying Hunter's Confrontation Clause objection. We overrule Hunter's first point of error.

## II. Hunter's Point of Error Regarding the State's Use of Post-Arrest Silence Is Not Preserved

Kirk Byrom, an officer with the Fort Worth Police Department, testified that he located Hunter, who matched the description given by Walker, in the men's restroom of the Salvation Army building. During the State's questioning, Byrom testified that he held Hunter at gunpoint. Then, the following exchange occurred:

> Q. [BY THE STATE] How was his demeanor once you -- once you found [Hunter]?
>
> A. Obviously when I came in, yelled police, he seemed kind of startled at first. I started giving directions. He followed my orders, did exactly as I said, didn't say anything to me. Officers came in and handcuffed him, and I walked out of the room.
>
> Q. Did he seem surprised that he was being handcuffed and detained?

5

A.     He seemed like it was something that was supposed to happen.  He didn't seem surprised.  He was just nonchalant.

Q.     Did he ever make any -- did he ever make any statements asking why --

[BY THE DEFENSE]:  I'm going to object to references to what an in-custody person is saying or not saying.

[BY THE STATE]:  Your Honor, there's been no testimony that he's -- I asked about him being detained.

THE COURT:  Well, you asked if he was being handcuffed and detained, so I'll sustain the objection at this point.

Q.     (BY [THE STATE]) Before he was placed in handcuffs, did he ever make any statements regarding or acting surprised as to -- or let me rephrase.
Did he ever make any statements asking why he was being arrested?

[BY THE DEFENSE]:  Your Honor, I'm going to make the same objection, 38.23 and Fifth Amendment, Article 1, Section 10.  He's got a gun pointed at him, and I think there's certain privileges that apply at that point.  So to ask did he make any statements or not I think is in treacherous territory.

THE COURT:  That's overruled.

Q.     (BY [THE STATE]) Did he ever make any statements asking why he was being held at gunpoint or detained?

A.     No, sir.

Hunter argues that the trial court's ruling allowed the State to comment on his post-arrest silence.

The State argues that error was not properly preserved.  We agree.

"As a prerequisite to presenting a complaint for appellate review, the record must show

that:  (1) the complaint was made to the trial court by a timely request, objection, or motion . . . ."

TEX. R. APP. P. 33.1(a)(1).  "In addition, a party must object each time the inadmissible evidence

is offered or obtain a running objection."  *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App.

6

2003). "An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Id.*

Here, the jury heard that Byrom held Hunter at gunpoint as soon as he located him. In response to the State's questioning about Hunter's demeanor, Byrom testified that Hunter "didn't say anything to [Byrom]."[2] Hunter failed to object to this testimony. Thus, Hunter's objection regarding post-arrest silence was untimely. Additionally, although the trial court overruled Hunter's objection to the question of whether he made any statements "[b]efore he was placed in handcuffs," Hunter failed to object to the State's question of whether Hunter "ever ma[d]e any statements asking why he was being held at gunpoint or detained." Thus, any error in the trial court's decision to overrule Hunter's objection was cured by Byrom's unobjected-to testimony that Hunter remained silent. *See id.* at 509–10. Therefore, we overrule Hunter's second point of error.

### III.     Hunter Was Not Harmed by the Admission of the Nature of His Prior Conviction

The United States Supreme Court has held that a district court abuses its discretion if it spurns a defendant's offer to stipulate to a prior felony conviction and admits a record of judgment or similar evidence identifying the previous offense "when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction." *Old Chief v. United States*, 519 U.S. 172, 174 (1997). Likewise, the Fort Worth Court of Appeals has held,

---

[2]Prior to Byrom's testimony, G. G. Hempstead, another police officer with the Fort Worth Police Department, testified without objection that Hunter said nothing to him after his apprehension.

> [W]hen a defendant charged with possession of a firearm by a felon stipulates to her status as a felon and to the prior felony offense and when she objects to the reading of the portion of the indictment describing the type of prior felony offense committed, it is error to permit the State to read those facts to the jury as they have no probative value and can serve only to prove the defendant's bad character or to provide a prejudicial conformity inference.

*McIlroy v. State*, 188 S.W.3d 789, 791, 795 (Tex. App.—Fort Worth 2006, no pet.) (citing *Old Chief*, 519 U.S. at 174).

Citing to *Old Chief* and *McIlroy*, Hunter offered to stipulate that he was previously convicted of a felony, and he filed a motion asking the trial court not to permit the State to reference the fact that his prior conviction was for robbery causing bodily injury. The trial court denied the motion on the ground that it believed the jury was entitled to know that the prior offense was a robbery, since that fact was contained in the indictment. To prevent the introduction of additional evidence related to the robbery, Hunter then entered into a stipulation that he was previously convicted of a robbery causing bodily injury, after obtaining both a running objection and the trial court's assurances that all of his complaints under *Old Chief* and *McIlroy* were preserved in spite of the stipulation. As a result of the trial court's rulings, the State was allowed to read the indictment's language and introduce the stipulation demonstrating that Hunter was previously convicted of robbery causing bodily injury.

On appeal, Hunter argues that the trial court erred by allowing the State to inform the jury of the nature of Hunter's prior felony conviction, rather than just the fact that he had a final felony conviction. Conceding error, the State argues only that Hunter was not harmed by the admission of this evidence.

8

"Because the error is nonconstitutional, we apply rule 44.2(b) and disregard the error if it did not affect appellant's substantial rights." *Id.* at 796. "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* "In making this determination, we review the record as a whole." *Id.* "When performing a harm analysis under rule 44.2(b), we consider 'any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, [and] the character of the alleged error and how it might be considered in connection with other evidence in the case.'" *Id.* (quoting *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)). "We may also consider closing arguments, evidence of the defendant's guilt, and the jury instructions." *Id.*

At trial, Hempstead testified that he spotted a person walking near the Salvation Army building that matched the description given by Walker. Video surveillance established that Hunter was wearing a white muscle t-shirt, black shorts, blue shoes, and a black stocking cap. Photographs taken after Hunter's arrest further showed that he had tattoos on his neck. Hempstead testified that he asked Hunter to stop. According to Hempstead, Hunter immediately dropped the backpack, fled, jumped the fence of a nearby car lot, and disappeared. Video surveillance of the street corroborated Hempstead's account. Byrom testified that he also saw a suspect matching Walker's description standing on top of a fence while holding on to a telephone pole.

Hempstead testified that he retrieved the backpack, confirmed that it contained a loaded firearm, and secured it in his patrol unit. Several responding patrol units established a perimeter around the area in an effort to locate Hunter. During the frantic search, the jury heard testimony that the police had arrested another African-American male who was wearing a white muscle

9

t-shirt while at the Salvation Army building, but that he was released after Hempstead informed the officers that he was not the man who dropped the backpack and fled from him.

Hempstead testified that the officers were eventually notified by radio that Byrom had located Hunter in a bathroom inside the Salvation Army building. Byrom testified that Hunter was sweaty and was washing fresh wounds on his forearm, which were consistent with injuries a person might sustain while climbing a fence. Although Hunter told police that the backpack did not belong to him, both Hempstead and Byrom identified Hunter as the man they saw fleeing from police. Hempstead specifically testified that he saw Hunter with the backpack.

Aside from the reading of the indictment and stipulation, the State argued during closing that Hunter ran because he was aware that he was convicted of robbery causing bodily injury, and, thus, was aware that he was a felon in possession of a firearm. The fact that Hunter was convicted of robbery causing bodily injury was also contained in the trial court's jury charge. However, the jury charge also contained the following instructions:

> The fact that a person has been arrested, confined, or indicted for, or otherwise charged with the offense gives rise to no inference of guilt at his trial.
>
> . . . .
>
> You are to decide whether the State has proved beyond a reasonable doubt that the Defendant is guilty of the crime charged. The Defendant is not on trial for any act, conduct, or offense not alleged in the indictment.
>
> . . . .
>
> You are instructed that if there is any testimony before you in this case regarding the Defendant's having committed bad acts other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the Defendant committed such other bad acts, if any were committed, and even then

10

you may only consider the same in determining the proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the Defendant if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.

. . . .

With respect to the evidence admitted in this case concerning the Defendant having been previously convicted of a felony offense, if he was, you are instructed that such evidence cannot be considered by you as in any manner proving or tending to prove that the Defendant is guilty of the offense of unlawful possession of a firearm, alleged to have been committed on or about the 7th day of September, 2016.

Here, the jury heard that Hunter's prior offense was a violent one that resulted in bodily injury. Yet, the State's references to the robbery were brief, two police officers identified Hunter as the perpetrator, and the jury was able to match Hunter's appearance to the description provided by Walker. Further, the trial court specifically instructed the jury that the prior robbery could not be considered "as in any manner proving or tending to prove that" Hunter was guilty of unlawful possession of a firearm. "We presume the jury followed these instructions absent evidence to the contrary." *White v. State*, 395 S.W.3d 828, 839 (Tex. App.—Fort Worth 2013, no pet.).

We conclude that in the context of the entire case against Hunter, the trial court's error in allowing the State to read the specific description of Hunter's prior felony conviction did not have a substantial or injurious effect on the jury's verdict and did not affect Hunter's substantial rights. *See McIlroy*, 188 S.W.3d at 797. Therefore, we overrule Hunter's last point of error.

11

## IV. Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:     October 16, 2017
Date Decided:       October 25, 2017

Do Not Publish

12