**Opinion issued November 3, 2022**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

## NO. 01-22-00268-CR

————————————

**MELTON STAVES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 179th District Court**
**Harris County, Texas**
**Trial Court Case No. 1552697**

---

## MEMORANDUM OPINION

A jury found appellant, Melton Staves, guilty of murder, found two enhancement allegations true, and assessed punishment at 25 years' confinement. In two issues on appeal, appellant contends that (1) the evidence is insufficient to prove

murder and (2) appellant received ineffective assistance of counsel at trial. We affirm.

## BACKGROUND

On May 18, 2017, Dulce Rodriguez stopped at a gas station where she sat in her truck as her friend went inside. While she was waiting, Rodriguez saw two men across the street who were gesturing as if they were arguing. Faustino Herrera, the complainant, was 68 years old and, at 5'4" and 143 pounds, "a little frail looking." Appellant, who was 50 years old, was wearing red clothing and was larger and stronger than Herrera. Rodriguez turned away briefly to see if her friend had left the store, and when she turned back, Herrera was lying on the ground on his side and appellant was "hitting him with the feet" with "hard blows." "With his feet, he was beating him." Rodriguez saw appellant kick Herrera on the head "several times," but she did not "count the times." Rodriguez saw appellant walk toward some nearby apartments, so she followed him and took video of him with her phone. She then called 911 and returned to the scene of the attack to wait for police.

Another witness, Todd Johnson, was walking from a nearby park when he heard some men arguing. As he turned the corner, he saw appellant standing over Herrera. Johnson knew and recognized both appellant and Herrera. He heard Herrera

2

tell appellant to leave the property they were both on at the time,[1] and when appellant responded, he sounded "agitated." Johnson then saw appellant "put his foot on [Herrera's] head, and he demonstrated to the jury how he saw appellant "stomp" on Herrera. Johnson recalled that Herrera was unconscious, and appellant walked away to a nearby apartment complex where he sometimes visited with a friend. Johnson, with the assistance of a passer-by, moved Herrera to the front yard of his nearby residence to wait for the ambulance and police.

Once police arrived at the scene, they went to the apartments that both Rodriguez and Johnson had seen appellant walk toward. Appellant's friend voluntarily allowed the police in her apartment, where they found appellant hiding in a pantry. They arrested appellant and charged him with aggravated assault; the charges were upgraded to murder when Herrera died in the hospital several days later.

At trial, the assistant medical examiner testified that Herrera had abrasions on the right back of his scalp, his right elbow, and both knees. The cause of death was a "basilar subarachnoid hemorrhage due to a left vertebral artery dissection due to blunt head and neck trauma." Under the scalp abrasion, the medical examiner found "an impact site underneath that area, evidenced by soft tissue contusion[.]" The

---

[1] The record indicates that Herrera lived nearby and acted as a maintenance person for the commercial site where the murder occurred.

3

medical examiner also dissected the back of Herrera's neck and found "bleeding into the soft tissue of the back of the neck" that was "indicative of a blunt impact trauma." The medical examiner could not determine which injury—the head trauma or the neck trauma—caused the vertebral artery dissection that led to Herrera's death, but she did conclude that either of the two injuries would have been sufficient to cause the tear or that both injuries together caused the tear.

The medical examiner testified that if Herrera had been pushed and then kicked, it could have torn the artery. She also concluded that a push or a fall could have caused the head injury, which could also have torn the artery. Repeated kicks to the neck could also have torn the artery. She could not, however, determine whether Herrera fell accidentally or whether he was pushed. She also could not tell whether the blunt trauma to Herrera's head and/or neck was caused by being hit with a blunt object (appellant's foot) or by falling against a blunt object (the ground). The medical examiner testified that Herrera's blood alcohol content was .30 per deciliter. She also testified that Herrera's head injury could have caused the cardiac arrest noted by paramedics on arrival.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant contends that there is insufficient evidence to show two elements of murder: causation and intent. Specifically, appellant contends that "the Complainant's death could have been caused by his fall" and that there is "a

reasonable doubt concerning [appellant's] intent to cause the death of the Complainant or commit an act clearly dangerous to human life that caused the Complainant's death."

### *Standard of Review and Applicable Law*

We review the legal sufficiency of the evidence by considering all the evidence in the light most favorable to the jury's verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015); *Edwards v. State*, 497 S.W.3d 147, 156 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). Our role is that of a due-process safeguard, ensuring only the rationality of the trier-of-fact's finding. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We give deference to the responsibility of the factfinder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We defer to the factfinder's determinations on witnesses' credibility and the weight to be given to their testimony and do not substitute our judgment on these matters. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

As charged in this case, a person commits murder if he (1) *intentionally* or knowingly *causes* the death of an individual or (2) *intends to cause* serious bodily

5

injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE § 19.02(b)(1), (2) (emphasis added).

*Analysis*

Appellant challenges the sufficiency of the evidence for both the causation and intent elements of the murder statute. We address each respectively.

*Causation*

In this case, the medical examiner testified that Herrera suffered two wounds, either of which could have caused a tear in his vertebral artery, leading to the brain hemorrhage that killed him: (1) a blunt-force-trauma impact to the back of his head, with an associated abrasion and internal hemorrhage, but no skull fractures and (2) blunt-force-trauma impact to the back of the neck, accompanied by bruising and soft-tissue damage. The medical examiner explained that both injuries caused significant bleeding in Herrera's brain, and that either injury, alone, was sufficient to kill him.

Appellant argues that, because there was evidence from the medical examiner that she could not determine whether Herrera's head injury was caused by someone hitting him with a blunt object or by him falling against a blunt object, it was equally likely that "the Complainant tripped while backing away from Appellant and the fall caused his death." Because, appellant argues, this theory of the case is equally as likely as the State's theory that appellant pushed Herrera down and then kicked him,

the evidence is legally insufficient to show that he caused Herrera's death. Put another way, appellant argues that Herrera's fall could have been accidental and could have caused his fatal head injuries, and that appellant's kicking him in the head and/or neck did not.

Essentially, appellant argues that, because there is an alternative-reasonable hypothesis for the causation of Herrera's death, the evidence is legally insufficient. However, the alternative-reasonable-hypothesis theory does not apply in reviewing evidentiary sufficiency. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) ("Although the State must prove that a defendant is guilty beyond a reasonable doubt, the State's burden does not require it to disprove every conceivable alternative to a defendant's guilt."); *Temple v. State*, 390 S.W.3d 341, 363 (Tex. Crim. App. 2013) (holding same); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) ("For the evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt.").

Here, there was evidence that Rodriguez saw appellant and Herrera arguing; appellant was gesturing at Herrera animatedly and Herrera was standing there with his arms down, doing nothing. Rodriguez turned away briefly, and when she turned back, she saw Herrera lying on his side on the ground and appellant repeatedly kicking him in the head with "hard blows." Another witness, Johnson, also saw appellant "stomp" on Herrera's head as he lay on the ground.

From this evidence, a jury could have rationally concluded that, while they were arguing, appellant, who was larger and stronger than Herrera, knocked Herrera to the ground and continued kicking him about the head, causing both the head and neck injuries that killed him. Or, the jury could have rationally concluded that, even if Herrera fell and was not pushed, he died because appellant repeatedly kicked him in the neck and head. Both scenarios are supported by legally sufficient evidence. That there is an alternative reasonable hypothesis in which Herrera "might" have accidentally fallen to the ground and died before appellant kicked him in the head or neck does not render the evidence legally insufficient. *See Wise*, 364 S.W.3d at 903.

*Intent*

Appellant also contends that "[t]here was testimony to support that Appellant intended to kick the Complainant, but not with enough force to result in his death." Appellant argues that Herrera smelled of alcohol, there was no trauma to his scalp or visible injuries, and that appellant was wearing tennis shoes, did not flee the scene, and was cooperative with police.

Proof of a culpable mental state generally relies on circumstantial evidence, which we scrutinize as we do other elements of an offense. *Laster v. State*, 275 S.W.3d 512, 519–20 (Tex. Crim. App. 2009); *Hernandez v. State*, 470 S.W.3d 862, 870 (Tex. App.—Fort Worth 2015, pet. ref'd) (quoting *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978)). A defendant's intent may be determined from his

words, acts, and conduct in light of the circumstances surrounding the offense. *Hernandez*, 470 S.W.3d at 870 (quoting *Smith v. State*, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998)); *see also Atkinson v. State*, 517 S.W.3d 902, 906 (Tex. App.—Corpus Christi 2017, no pet.) ("In determining whether the culpable mental state for a homicide offense was proven, the jury can use its collective common sense and may apply common knowledge and experience."). This includes consideration of events before, during, and after the offense. *Henderson v. State*, 825 S.W.2d 746, 749 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd). If the record supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

Here, appellant was seen and heard arguing with Herrera. Although neither eyewitness saw how Herrera came to be on the ground, the jury could have reasonably concluded that appellant knocked him to the ground, especially in light of evidence from both eyewitnesses that they saw appellant kick Herrera as he lay on the ground. The medical examiner found two injuries—a head injury and a neck injury—that were consistent with Herrera being pushed to the ground and then kicked. She further testified that either of these injuries could have caused the tear in Herrera's artery that led to his brain hemorrhage and subsequent death.

9

Many courts have held that kicking a person in the head is an act that is clearly dangerous to human life and is capable of causing serious bodily injury or death. *See Ordonez v. State*, No. 13-17-00617-CR, 2019 WL 3331465, at *4 (Tex. App.—Corpus Christi July 25, 2019, pet. ref'd) (mem. op., not designated for publication) (finding evidence sufficient to support defendant's intent to kill or cause serious bodily injury when he kicked victim in head multiple times); *Buchanan v. State*, No. 08-06-00203-CR, 2008 WL 3585900, at *3 (Tex. App.—El Paso Aug.14, 2008, no pet.) (not designated for publication) (finding evidence sufficient to support jury's determination that defendant intended to cause serious bodily injury when he and another individual kicked and punched victim and victim suffered injuries to brain as result of blunt force trauma); *Dale v. State*, 90 S.W.3d 826, 833 (Tex. App.—San Antonio 2002, pet. ref'd) (stating that evidence that defendant repeatedly kicked and hit victim on head while victim was on floor and not fighting back "shows that defendant intentionally caused serious bodily injury and committed act clearly dangerous to human life that caused [victim's] death."); *Depauw v. State*, 658 S.W.2d 628, 633–34 (Tex. App.—Amarillo 1983, pet. ref'd) (holding that jury could reasonably conclude that forcefully kicking victim in head constituted act clearly dangerous to human life).

Accordingly, we hold that there was legally sufficient evidence for the jury to conclude that appellant caused Herrera's death and intended to do so. We overrule issue one.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, appellant contends that he was denied effective assistance of counsel because "[t]rial counsel informed the jury panel that a defendant must have two prior felony convictions that resulted in a prison sentence for the punishment range to be twenty-five years to life after the trial court disclosed to the venire panel that Appellant was in the enhanced punishment range of twenty-five to life, thereby indicating to the jury that Appellant had previous criminal convictions."

### *Background*

During voir dire, the trial court discussed the range of punishment with the jury venire by stating that "this case is likely to be a range of 25 years to life in prison." When one veniremenber suggested that the 25-year minimum might be too low, the trial court gave the following hypothetical:

> So[,] let me throw this in a hypothetical for you. What if the facts that are presented to you include the gentleman is charged with killing his wife and when the State presents their case to you, you find out that she had been very sick, she was losing her faculties, she was really just not able to function and she begs her husband of 25 years, please just give me all the morphine. Right? Please just help me end this now instead of having to wait. In a circumstance like that, would you be able to consider a lower sentence?

11

Given that hypothetical, several of the veniremembers expressed concern that, if certain mitigating factors were present, they would not be able to consider a minimum punishment of 25 years because it would be too high.

During defense counsel's portion of voir dire, he followed up on the trial court's comments regarding the range of punishment and the following exchange occurred:

> [Defense counsel]: Also, I think while I'm talking to you, there was some issue in my mind about whether you thought a 25-year minimum in punishment was too harsh or too lenient. What was your position on that?
>
> [Veniremember]: My position was that I'd have a hard time convicting a person for a minimum of 25 years, depending on the circumstances.
>
> [Defense counsel]: There's certainly nothing wrong with having a hard time. But as long as the evidence led you to that, you could follow the law? That's the important test. And let me say that there are some things that would have to be proven before the minimum would be 25. You would have—what has to be proven before you begin at 25 is that the defendant was convicted of two prior felonies that followed each other after conviction. In other words, the normal—or we might say the normal range of punishment for murder is minimum of 5 years, not 25. And you don't get to the 25 unless you find beyond a reasonable doubt that he's a habitual offender, which means he has been convicted and sent to prison for two prior felonies. I don't know if that was clear or not.
>
> [Veniremember]: No, that was not made clear. In circumstances like that, then, no, I wouldn't have a problem.
>
> [Defense counsel]: Okay. Yeah, when we're asking about the 25, you have to make certain findings before you get to the minimum of 25. Otherwise, it starts at five.

*Standard of Review*

The Sixth Amendment of the United States Constitution and Article I, section 10, of the Texas Constitution guarantee a criminal defendant the right to reasonably effective assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). The right to effective assistance of counsel requires "objectively reasonable representation," not "errorless counsel." *Lopez*, 343 S.W.3d at 142 (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984), and *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)).

To establish that trial counsel provided ineffective assistance, an appellant bears the burden to demonstrate by a preponderance of the evidence that: (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687; *Lopez*, 343 S.W.3d at 142. An appellant must prove both prongs before an appellate court will find counsel's representation to be ineffective. *Lopez*, 343 S.W.3d at 142 (citing *Strickland*, 466 U.S. at 687); *see Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

To satisfy the first prong, an appellant must show that his trial counsel's performance fell below an objective standard of reasonableness under the prevailing norms. *Strickland*, 466 U.S. at 687–88; *Lopez*, 343 S.W.3d at 142. Under the second

prong, an appellant must demonstrate prejudice, or "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Lopez*, 343 S.W.3d at 142; *see Donald v. State*, 543 S.W.3d 466, 487 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (stating that claims of ineffective assistance during punishment phase of trial require defendant to "prove that there is a reasonable probability that, but for counsel's errors, the sentencing jury would have reached a more favorable verdict") (quoting *Ex parte Rogers*, 369 S.W.3d 858, 862–63 (Tex. Crim. App. 2012)). A reasonable probability is one sufficient to undermine confidence in the outcome. *Lopez*, 343 S.W.3d at 142.

Our review of trial counsel's effectiveness is highly deferential. *Strickland*, 466 U.S. at 689; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). We "indulge a strong presumption" that counsel's performance fell within the wide range of reasonable professional assistance, and an appellant must overcome the presumption that the challenged action might be considered "sound trial strategy." *Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142.

For an appellate court to find that counsel was ineffective, "counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Lopez*, 343 S.W.3d at 142 (citing *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). "It is not sufficient that appellant

show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Id.* at 142–43 (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)).

In most cases, the record on direct appeal is undeveloped and thus inadequate to show that trial counsel was not effective. *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012); *see Thompson*, 9 S.W.3d at 813 ("A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal."). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593 (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). When trial counsel is not provided an opportunity to explain his actions, we will not find that counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Goodspeed*, 187 S.W.3d at 392).

*Analysis*

We begin by noting that "a *prosecutor* may inform the jury panel of the range of punishment applicable if the state were to prove prior [] conviction[s] for enhancement purposes, but it may not inform the jury of any of the specific allegations contained in the enhancement paragraph[s] of a defendant's indictment." *Frausto v. State*, 642 S.W.2d 506, 509 (Tex. Crim. App. 1982); *Johnson v. State*,

15

901 S.W.2d 525, 532 (Tex. App.—El Paso 1995, pet. ref'd) (holding that prosecutor and trial court may inform jury panel in hypothetical terms of applicable range of punishment if State proves prior convictions for enhancement purposes); *see also Brooks v. State*, No. 03-03-00411-CR, 2004 WL 1114503, at *1 (Tex. App.—Austin May 20, 2004, pet. ref'd) (noting that "settled rule" permits prosecutor to inform jury panel of range of punishment if State proves prior conviction for enhancement, but prosecutor may not inform jury panel of specific allegations); *Chevis v. State*, No. 01-00-00092-CR, 2000 WL 1473771, at *1 (Tex. App.—Houston [1st Dist.] Oct. 5, 2000, pet. ref'd) (not designated for publication) (holding same).

The question we must decide is whether it can ever be sound trial strategy for defense counsel to do the same. *See Menefield*, 363 S.W.3d at 593 (holding that when, as here, trial counsel has not been provided opportunity to explain actions, we will not find deficient representation unless challenged conduct "was so outrageous that no competent attorney would have engaged in it").

Here, the trial court's questioning had identified several seemingly defense-oriented jurors who indicated that they would find even the low end of the range of punishment too harsh under certain circumstances. Defense counsel could rationally have decided that it was in appellant's best interest to rehabilitate these jurors in an effort to keep them from being struck for cause because of an inability to consider the entire range of punishment. Defense counsel's questioning was hypothetical, as

16

permitted by *Frausto*, emphasized that it was the State's burden to prove any enhancements that it alleged, and did not inform the jury venire regarding any of specific allegations contained in the enhancements.

We believe that, under the circumstances presented here, defense counsel's decision to inform the jury venire, hypothetically, that if the State were to prove prior offenses, then the statutory minimum would increase from 5 to 25 years was not "so outrageous that no competent attorney would have engaged in it." *Id.* As such, appellant has not met the first prong of the *Strickland* test.[2]

Accordingly, we overrule issue two.

---

[2]   We also note that appellant cannot meet the second prong of *Strickland* by showing that the alleged deficient performance prejudiced his defense. *See Strickland*, 466 U.S. at 687; *Lopez*, 343 S.W.3d at 142. Here, there was overwhelming evidence of appellant's guilt. Two eyewitnesses, one of whom knew appellant, saw him stomp and kick Herrera as he lay on the ground, and a forensic medical expert concluded that such actions were sufficient to have caused Herrera's death. *See Adekeye v. State*, 437 S.W.3d 62, 73 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (finding no prejudice for purposes of ineffective assistance based on stipulation informing jury of appellant's prior felony conviction for aggravated robbery when evidence of appellant's guilt for current offense of aggravated robbery and felon-in-possession was overwhelming); *see also McIlroy v. State*, 188 S.W.3d 789, 796–97 (Tex. App.—Fort Worth 2006, no pet.) (holding that, even though trial court erred in permitting State to read entire indictment of felon-in-possession charge, including predicate offense, error was harmless because of "overwhelming evidence" of defendant's guilt of current offense). Additionally, defense counsel's strategy in voir dire was successful because the jury, having found both enhancements true, assessed punishment at 25 years, the statutory minimum.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Landau and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).